UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORINIA

CHRISTOPHER J.,[1]

Plaintiff,

v.

CAROLYN W. COLVIN, *Acting Commissioner of Social Security* [2]

Defendant.

Case No.:  24cv349-GPC (MSB)

**REPORT AND RECOMMENDATION FOR ORDER REVERSING COMMISSIONER'S DECISION AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

**[ECF Nos. 11, 13, 14]**

This Report and Recommendation is submitted to the Honorable Gonzalo P. Curiel, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.  On February 22, 2024, Plaintiff Christopher J. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final adverse decision by

---

[1] Under Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the Court in [Social Security cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only their first name and last initial."

[2] Carolyn W. Colvin is the Acting Commissioner of Social Security.  See Social Security Commissioners, https://www.ssa.gov/history/commissioners.html.  Accordingly, Colvin is substituted as the Defendant in this lawsuit.  See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party").

1  Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner").

2  (ECF No. 1.)

3      Now pending before the Court is Plaintiff's Opening Brief, claiming error by the

4  Administrative Law Judge ("ALJ") who conducted the administrative hearing and issued

5  the decision denying Plaintiff's application for disability insurance benefits.  (ECF No.

6  11.)  The Court has carefully reviewed the Complaint [ECF No. 1], the Administrative

7  Record ("AR") [ECF No. 8], Plaintiff's Opening Brief [ECF No. 11], the Commissioner's

8  Responsive Brief [ECF No. 13], and Plaintiff's Reply [ECF No. 14].  For the reasons set

9  forth below, the Court **RECOMMENDS** judgment be entered **REVERSING** the

10  Commissioner's decision and **REMANDING** this matter for further administrative

11  proceedings consistent with this Report and Recommendation.

12                    **I.      PROCEDURAL BACKGROUND**

13      On May 24, 2021, Plaintiff applied for Social Security benefits under Titles II and

14  XVIII of the Social Security Act, alleging disability beginning on November 1, 2018.  (AR

15  206–07.)  The Commissioner denied his application initially on September 24, 2021, and

16  again upon reconsideration on January 18, 2022.  (AR 98–103; AR 105–110.)  On January

17  24, 2022, Plaintiff requested an administrative hearing.  (AR 111–12.)  ALJ Howard

18  Treblin held a telephonic hearing on February 13, 2023, during which Plaintiff appeared

19  with counsel; Plaintiff and vocational expert, Jeff Komar, testified.[3]  (AR 32–50.)

20      In a written decision dated March 10, 2023, the ALJ found Plaintiff had not been

21  under a disability from November 1, 2018, through the date of the ALJ's decision.  (AR

22  14–31.)  On May 14, 2023, Plaintiff requested review of the ALJ's decision.  (AR 203–05.)

23  The Appeals Council denied Plaintiff's request for review on January 4, 2024, making the

24  ALJ's decision final.  (AR 1–6.)  See also 42 U.S.C. § 405(g).  This timely civil action

25  followed.

26

27  [3] The administrative hearing was initially set for September 27, 2022 [AR 165], but was continued to
February 13, 2023, to allow for a psychological consultative examination, which took place on January
28  4, 2023 [AR 558–67].  (AR 17.)

1

## II.    SUMMARY OF THE ALJ'S FINDINGS

2      In rendering his decision, the ALJ applied the Commissioner's five-step sequential

3  evaluation process.  See 20 C.F.R. § 404.1520.  At step one, the ALJ found Plaintiff had

4  not engaged in substantial gainful activity since November 1, 2018, the alleged onset

5  date.[4]  (AR 19.)  At step two, the ALJ found Plaintiff has the following severe

6  impairments: "bipolar II disorder[] and cannabis use disorder."  (AR 20.)  The ALJ noted

7  these medically determinable impairments significantly limit Plaintiff's ability to perform

8  basic work activities.  (Id.)  By contrast, the ALJ found Plaintiff's "tremors, anxiety, mood

9  swings, [and] attention deficit hyperactivity disorder" do not have more than a minimal

10  impact on Plaintiff's ability to perform work and are therefore non-severe impairments.

11  (Id.)

12      At step three, the ALJ determined Plaintiff does not have an impairment or

13  combination of impairments that meets or medically equals the severity of one of the

14  listed impairments in the Commissioner's Listing of Impairments.  (Id.)  Specifically, the

15  ALJ found Plaintiff's mental impairments do not meet or medically equal the criteria of

16  both paragraphs B and C of listing 12.04 (depressive, bipolar and related disorders).  (AR

17  20–21.)  With respect to the paragraph B criteria, the ALJ found Plaintiff has mild

18  limitations in understanding, remembering, or applying information and concentrating,

19  persisting, or maintaining pace; the ALJ also found Plaintiff has moderate limitations in

20  interacting with others and adapting or managing oneself.  (Id.)  The ALJ determined the

21  paragraph B criteria are not satisfied because Plaintiff's mental impairments do not

22  cause at least one extreme limitation or two marked limitations.  (AR 21.)  Furthermore,

23  the ALJ determined the record fails to document the existence of any paragraph C

24  criteria.  (Id.)

25      Ultimately, the ALJ determined Plaintiff has the residual functional capacity

26

27  _____

[4] Plaintiff worked after the alleged onset date in 2019–2021, but it "did not rise to the level of substantial gainful activity" because his earnings did not exceed the requisite monthly amount for

28  those calendar years.  (AR 19.)  See also 20 C.F.R. § 404.1574.

("RFC") to do the following:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: understand, remember, carryout unskilled type work, with short and simple job instructions and tasks, consistent with simple and repetitive type work.  [Plaintiff] can interact with coworkers and supervisors appropriately, however the work should be non-collaborative work and no teamwork.  [Plaintiff] can make appropriate and intact handoff of work materials and products to coworkers and supervisors.  [Plaintiff] can respond appropriately to: supervision; routine work situations; settings; changes and would need a non-public work setting.  He can make appropriate decisions, ask questions, and use judgment.  [Plaintiff] should have non-public work, but he can have incidental contact, including brief or occasional contact with the public, so long as it is not job-related contact.

(AR 21–22.)  Further, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (AR 24.)

At step four, the ALJ determined Plaintiff could not perform his past relevant work as the following: Light Truck Driver (Dictionary of Occupational Titles ("DOT") 906.683-022, medium exertion); Administrative Clerk (DOT 216.362-010, light exertion); and Survey Work (DOT 205.367-054, light exertion).  (AR 25.)  In making this determination, the ALJ noted the vocational expert ("VE") testified an individual with Plaintiff's RFC would be unable to perform the past relevant work as actually or generally performed.  (Id.)  Finally, at step five, the ALJ found that given Plaintiff's age, education, work experience, and RFC, he could perform other jobs existing in significant numbers in the national economy.  (AR 26.)  Considering the VE's testimony, the ALJ determined Plaintiff could perform jobs such as Cleaner II (DOT 919.687-014, medium exertion); Hand Packager (DOT 920.587-018, medium exertion); and Meat Clerk (DOT 222.684-010, medium exertion.)  (Id.)  Thus, the ALJ concluded Plaintiff has not been under a disability from November 1, 2018, through March 10, 2023.  (AR 26–27.)

/ / /

24cv349-GPC (MSB)

### III.    DISPUTED ISSUES

In his Opening Brief, Plaintiff raises four issues as grounds for reversal:

1. Whether the ALJ's RFC finding properly addressed Plaintiff's limitations;
2. Whether the ALJ properly addressed listing 12.04;
3. Whether the ALJ provided clear and convincing reasons to discredit Plaintiff's testimony; and
4. Whether the ALJ met his burden of proof at step five.

(ECF No. 11 at 8.)

### IV.    STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision. See 42 U.S.C. § 405(g). The scope of judicial review is limited, and the denial of benefits will only be disturbed if the final decision is not supported by substantial evidence or contains a legal error. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018) (internal citations omitted). "Substantial evidence" is a "'term of art' used throughout administrative law to describe how courts are to review agency factfinding." Biestek v. Berryhill, 587 U.S. 97, 102 (2019) (quoting T-Mobile S., LLC v. City of Roswell, 574 U.S. 293, 301 (2015)). The Supreme Court has said substantial evidence means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Ninth Circuit explained that substantial evidence is "more than a mere scintilla, but less than a preponderance." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y of Health & Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988).

Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal citations omitted). This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citing Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Even if the reviewing court finds substantial evidence supports the ALJ's conclusions, the

court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching their decision.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).  The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the case to the Social Security Administration for further proceedings.  Id.  However, the reviewing court "may not reverse an ALJ's decision on account of an error that is harmless."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1055–56 (9th Cir. 2006)).

## V.    DISCUSSION

### A.  Whether the ALJ's RFC Finding Properly Addressed Plaintiff's Limitations

#### 1.  Parties' arguments

Plaintiff argues the ALJ's RFC determination did not address Plaintiff's moderate mental limitations; therefore, the RFC is not supported by substantial evidence.  (ECF No. 11 at 10–11.)  Plaintiff contends Plaintiff's "[m]oderate limitations cannot be addressed by limiting work to simple routine work with limited contact," and thus "the ALJ has not property addressed [his] moderate mental limitations" in the functional areas of interacting with others and adapting or managing oneself.[5]  (Id. at 11.)

In response, the Commissioner contends the ALJ's RFC determination "reasonably captured [Plaintiff's] alleged limitations with respect to memory, being around strangers, and concentrating."  (ECF No. 13 at 13 (citing AR 35–37).)  Specifically, the Commissioner argues the ALJ reasonably accounted for Plaintiff's limitations by "restricting Plaintiff to short and simple job instructions and tasks consistent with simple and repetitive work, no teamwork, and non-collaborative work in a non-public setting."

---

[5] Plaintiff also asserts the ALJ's RFC determination did not address Plaintiff's moderate limitations in the areas of "following normal rules" and exhibiting "violent behavior while working when confronted with stressors."  (ECF No. 11 at 10 (citing AR 21).)  The Court focuses on the four broad functional areas set forth in the regulations.  See 20 C.F.R. § 404.1520a(c)(3).

1 (Id. at 14.)  The Commissioner further argues Plaintiff's contention that his mild and

2 moderate symptoms necessitate further limitations is without merit and at odds with

3 binding Ninth Circuit authority.  (Id. at 13.)  First, the Commissioner claims Plaintiff

4 improperly relies on nonbinding district court decisions holding that "mild or moderate

5 mental health symptoms are not necessarily 'sufficiently severe' enough to 'significantly

6 limit[] a claimant's ability to do work beyond the exertional limitation.'"  (Id. (citing

7 Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007)).)  Second, the Commissioner

8 contends the Ninth Circuit recently upheld an ALJ's finding of "no mental limitations" in

9 the RFC where the ALJ separately found mild limitations with respect to paragraph B.

10 (Id. (citing Woods v. Kijakazi, 32 F.4th 785, 794 (9th Cir. 2022)).)  Finally, the

11 Commissioner maintains the ALJ's findings regarding Plaintiff's mental limitations are

12 "fully consistent with the prior administrative findings of record."  (Id. at 14 (citing AR

13 24, 68–69, 71–73, 86).)  Thus, the Commissioner argues the ALJ's RFC finding is

14 supported by substantial evidence and should be upheld.  (Id.)

15       In his Reply, Plaintiff reiterates his contention that the ALJ must address moderate

16 limitations in the RFC; because the ALJ's RFC finding did not include moderate

17 limitations in two functional areas, Plaintiff alleges error.  (ECF No. 14 at 5–6.)  Plaintiff

18 additionally argues Hoopai and Woods are misplaced because neither case involved a

19 claimant assessed with moderate mental limitations.  (Id. at 6.)  Therefore, Plaintiff

20 asserts the ALJ's findings are not supported by substantial evidence.  (Id.)

21       **2. Applicable law**

22       RFC, or residual functional capacity, is a claimant's ability to do work-related

23 activities on a sustained basis (i.e., eight hours a day, five days per week).  Titles II & XVI:

24 Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-

25 8P, 1996 WL 374184, at *1 (S.S.A. July 2, 1996).  Thus, it represents the maximum

26 amount of work a claimant can perform despite their limitations, based on all relevant

27 evidence in the record.  See 20 C.F.R. § 416.945(a)(1); 20 C.F.R. § 404.1545(a)(1).  In

28 making this finding, the ALJ must consider all the claimant's medically determinable

1  impairments, including those that are non-severe.  See 20 C.F.R. § 404.1545(a)(2); see

2  also Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting SSR 96-8P, 1996 WL

3  374184, at *5).  "The RFC therefore should be exactly the same regardless of whether

4  certain impairments are considered 'severe' or not."  Buck, 869 F.3d at 1049.

5          Additionally, the Ninth Circuit has held the agency must consider the claimant's

6  testimony regarding their capabilities, as well as all relevant evidence, including medical

7  records, lay evidence, and pain.  Chaudhry v. Astrue, 688 F.3d 661, 670 (9th Cir. 2012);

8  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006); SSR 96-8P, 1996 WL

9  374184, at *5.  The Ninth Circuit has generally held "an RFC that fails to take into

10  account a claimant's limitations is defective."  Valentine v. Comm'r Soc. Sec. Admin., 574

11  F.3d 685, 690 (9th Cir. 2009); see also Samples v. Comm'r Soc. Sec. Admin., 466 Fed.

12  App'x 584, 586 (9th Cir. 2012).  "[T]he limitations identified in the paragraph B and

13  paragraph C criteria are not an RFC assessment."  SSR 96-8p, 1996 WL 374184, at *4

14  (internal quotation marks omitted).  Rather, these limitations are used to rate the

15  severity of a claimant's mental impairments at steps two and three.  Id.  The RFC

16  assessment thus requires "a more detailed assessment" than what is required at steps

17  two and three.  Id.  See also Buck, 869 F.3d at 1048–49 (noting step two is "merely a

18  threshold determination" and "is not meant to identify the impairments that should be

19  taken into account when determining the RFC"); Darren Jeffrey C. v. Kijakazi, 3:21-CV-

20  01012-AHG, 2022 WL 4474261, at *10 (S.D. Cal. Sept. 26, 2022) ("[A] boilerplate

21  statement that the RFC 'reflects the degree of limitation' the ALJ found at steps two and

22  three is not sufficient to show that the requisite 'more detailed assessment' required by

23  the RFC determination was actually conducted.")

24          **3.  The ALJ's findings**

25          At step three of the five-step sequential evaluation process, the ALJ addressed the

26  four broad areas of mental functioning for evaluating mental disorders.  See 20 C.F.R. §

404.1520a(c)(3). The ALJ found Plaintiff has mild[6] limitations in the areas of understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. (AR 20–21.) Additionally, the ALJ found Plaintiff has moderate[7] limitations in the areas of interacting with others and adapting or managing oneself. (Id.) The ALJ determined Plaintiff does not have any marked[8] or extreme[9] mental limitations. (Id.)

Ultimately, the ALJ found Plaintiff has the RFC to perform a full range of work with the following non-exertional limitations:

- Understand, remember, carry out unskilled type work, with short and simple job instructions and tasks, consistent with simple and repetitive type work.
- Interact with coworkers and supervisors appropriately, however the work should be non-collaborative work and no teamwork.
- Respond appropriately to: supervision, routine work situations, settings, and changes; however, the work setting should be non-public.
- Should have non-public work, but can have incidental contact, including brief or occasional contact with the public, so long as it is not job-related contact.

(AR 20–21.) In making this RFC determination, the ALJ said he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Id.)

### 4. Analysis

The ALJ's RFC determination is not supported by substantial evidence because the ALJ erroneously substituted his paragraph B mental functioning analysis when formulating the RFC, rather than providing the requisite "more detailed assessment" of Plaintiff's mental impairments. (See AR 20–25.) Although the ALJ acknowledged Plaintiff has certain mild and moderate mental limitations, in assessing Plaintiff's RFC

---

[6] "Mild" means functioning independently, appropriately, effectively, and on a sustained basis is slightly limited. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(b).
[7] "Moderate" means functioning is fair. Id. § 12.00(F)(2)(c).
[8] "Marked" means functioning is seriously limited. Id. § 12.00(F)(2)(d).
[9] "Extreme" means the individual is unable to function. Id. § 12.00(F)(2)(e).

1   the ALJ considered only the classification of such limitations with respect to whether

2   they satisfied the paragraph B criteria.  (AR 20–21.)  Ultimately, the ALJ concluded the

3   paragraph B criteria were not satisfied because Plaintiff's mental impairments do not

4   cause at least two marked limitations or one extreme limitation.  (Id.)  This finding, while

5   relevant to the ALJ's analysis at step three, is not equivalent to the level of detailed

6   consideration required to assess Plaintiff's RFC.  See 20 C.F.R. 404.1520(a); 20 C.F.R. §

7   404.1545; SSR 96–8p, 1996 WL 374184, at *4 (outlining the requirements for the five-

8   step sequential evaluation process and RFC assessment).  Indeed, immediately prior to

9   stating his assessment of Plaintiff's RFC, the ALJ noted:

10      The limitations identified in the "paragraph B" criteria are not a residual
        functional capacity assessment but are used to rate the severity of mental
11      impairments at steps 2 and 3 of the sequential evaluation process.  The
        mental residual functional capacity assessment used at steps 4 and 5 of the
12      sequential evaluation process requires a **more detailed assessment** of the
        areas of mental functioning.  **The following residual functional capacity
13      assessment reflects the degree of limitation the undersigned has found in
        the "paragraph B" mental function analysis**.
14

15

16  (AR 21 (emphasis added).)

17      The ALJ did not provide a "more detailed assessment" of Plaintiff's mild and

18  moderate mental limitations following his paragraph B mental functioning analysis.  (See

19  generally AR 20–25.)  Instead, after concluding Plaintiff had the RFC to perform a full

20  range of work with certain non-exertional limitations, the ALJ provided a selective

21  summary of the medical evidence and stated his RFC assessment was "supported by the

22  objective evidence of record."  (AR 25.)  Merely repeating his findings with respect to

23  whether Plaintiff's limitations met the paragraph B criteria—without providing

24  additional explanation—does not rise to the level of "more detailed assessment"

25  required for the RFC determination.  See Victor R. v. O'Malley, No. 3:23-CV-00501-GPC-

26  BGS, 2024 WL 392616, at *4–5 (S.D. Cal. Feb. 1, 2024), report and recommendation

27  adopted, 2024 WL 1257277 (S.D. Cal. Mar. 25, 2024); Craig H. v. Kijakazi, No. 22CV800-

28  AJB (LR), 2023 WL 4679342, at *12–13 (S.D. Cal. July 21, 2023), report and

1   recommendation adopted, 2023 WL 5340794 (S.D. Cal. Aug. 18, 2023); Kitty S. v.

2   Kijakazi, No. EDCV 21-00390-JEM, 2022 WL 2117160, at *4–6 (C.D. Cal. June 13, 2022)

3   (all holding the ALJ erred when finding mental limitations at step two, but failing to

4   discuss those limitations when formulating the plaintiff's RFC).

5        Additionally, the ALJ's boilerplate assertion that the RFC assessment "reflects the

6   degree of limitation" he found in the paragraph B mental functioning analysis fails to

7   conclusively indicate he considered Plaintiff's mild and moderate mental limitations

8   when determining the RFC.  See Michele M. v. Saul, No. 19-CV-00272-JLB, 2020 WL

9   1450442, at *8 (S.D. Cal. Mar. 25, 2020) (finding error where "the ALJ did not explain

10  how, if at all, her assessment of Plaintiff's non-severe mental impairments factored into

11  her RFC determination.").  Regardless of severity, the ALJ was required to consider all of

12  Plaintiff's impairments when assessing his RFC.  See Hutton v. Astrue, 491 F. App'x 850,

13  850 (9th Cir. 2012) (citing 20 C.F.R. § 40.1545(a)(2)).  Here, the ALJ discussed Plaintiff's

14  mental limitations only within the context of paragraph B.  (AR 20–25.)  The ALJ did not

15  explain whether or not he considered Plaintiff's mild and moderate mental limitations

16  when determining Plaintiff's RFC, and the court "cannot substitute [its] conclusions for

17  the ALJ's, or speculate as to the grounds for the ALJ's conclusions."  Treichler v. Comm'r

18  of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (citing Bunnell v. Sullivan, 947

19  F.2d 341, 346 (9th Cir. 1991)).  Because the ALJ did not discuss how Plaintiff's mental

20  limitations were factored into the RFC determination, if at all, the Court finds error.

21       Finally, the Commissioner's reliance on Hoopai and Woods is misplaced.  The

22  Commissioner cited Hoopai in support of the proposition that "mild or moderate mental

23  health symptoms are not necessarily 'sufficiently severe' enough to 'significantly limit[]

24  a claimant's ability to do work beyond the exertional limitation.'"  (ECF No. 13 at 13

25  (citing Hoopai, 499 F.3d at 1077).)  However, Hoopai did not actually address whether

26  an ALJ must consider mild or moderate mental limitations when formulating the RFC;

27  instead, it addressed whether a severity determination at step two is dispositive of the

28  step five question regarding the claimant's ability to perform work existing in the

national economy.  See Kitty S., 2022 WL 2117160, at *6; Gates v. Berryhill, No. ED CV

16-00049 AFM, 2017 WL 2174401, at *3 (C.D. Cal. May 16, 2017).  The Commissioner

also cited Woods to support the proposition that an ALJ's finding of "no mental

limitations" in the RFC is supported when the ALJ separately finds mild limitations with

respect to the paragraph B criteria.  (ECF No. 13 at 13 (citing Woods, 32 F.4th at 794).)

However, an ALJ is not permitted to rely on a finding of non-severity as a substitute for a

proper RFC analysis.  SSR 96-8P, 1996 WL 374184, at *4; see also Buck, 869 F.3d at

1048–49 ("Step two is merely a threshold determination meant to screen out weak

claims . . . It is not meant to identify the impairments that should be taken into account

when determining the RFC.") (internal citation omitted); Darren Jeffrey C., 2022 WL

4474261, at *10 (holding a boilerplate statement that the RFC "reflect[ed] the degree of

limitation" found in earlier steps did not satisfy the more detailed analysis required by

the regulations).

      In sum, after finding Plaintiff had mild and moderate limitations in the four areas

of mental functioning, the ALJ merely offered boilerplate language that the RFC reflects

the degree of limitation found in the paragraph B analysis.  (AR 20–21.)  The ALJ did not

provide any further discussion of Plaintiff's mental limitations when formulating the

RFC.  (AR 20–25.)  An "RFC that fails to take into account a claimant's limitations is

defective."  Valentine, 574 F.3d at 690.  Thus, the ALJ erred by failing to perform a more

detailed assessment of Plaintiff's mental limitations when determining Plaintiff's RFC.

McCawley v. Astrue, 423 Fed. App'x. 687, 689 (9th Cir. 2011) (holding that RFC "may be

the most critical finding contributing to the final . . . decision about disability") (internal

citation omitted).  Because the RFC assessment could necessarily result in a different

disability determination, the Court **RECOMMENDS** remand for the ALJ to adequately

consider Plaintiff's mental limitations as they relate to Plaintiff's RFC.

/ / /

/ / /

/ / /

1

**B. <u>Whether the ALJ Properly Addressed Listing 12.04</u>**

2

**1. Parties' arguments**

3      Plaintiff argues the ALJ did not properly address the paragraph C criteria under

4  listing 12.04 at step three of the sequential evaluation process.  (ECF No. 11 at 9–10.)

5  Specifically, Plaintiff contends the ALJ omitted information that supports a paragraph C

6  finding, including discussion of Plaintiff's "psychiatric hospitalizations and records

7  showing persistent inability to function due to depression and mania."  (<u>Id.</u> at 9.)

8  Plaintiff asserts "the evidence supports meeting Mental Listing 12.04 paragraph A and

9  C."  (<u>Id.</u> at 10.)

10      In response, the Commissioner argues the ALJ reasonably found Plaintiff did not

11  meet or equal the criteria of any listing, including listing 12.04.  (ECF No. 13 at 14–17.)

12  The Commissioner explains that to satisfy paragraph C of listing 12.04, the claimant

13  must show his mental disorder is serious and persistent, with evidence of both: (1) a

14  highly structured setting for ongoing care; and (2) minimal capacity to adapt to changes.

15  (<u>Id.</u> at 15.)  Here, the Commissioner contends Plaintiff has not met his burden as to

16  either element.  (<u>Id.</u> at 15–17.)  Because substantial evidence supports the ALJ's step

17  three findings, the Commissioner argues they should be upheld.  (<u>Id.</u> at 17.)

18      In his Reply, Plaintiff argues the ALJ summarily and erroneously dismissed listing

19  12.04[10] by failing to address Plaintiff's long history of psychiatric treatment and

20  hospitalization when evaluating whether he met the paragraph C criteria.  (ECF No. 14 at

21  7–8.)  Plaintiff contends paragraph C does not require a showing of "permanent highly

22  structured settings."  (<u>Id.</u> at 8.)  Plaintiff also argues the Commissioner failed to address

23  the evidence supporting long term persistent mental limitations such that Plaintiff can

24  understand why he is being denied disability status.  (<u>Id.</u>)

25  / / /

26

---

27  [10] In Plaintiff's Reply, Plaintiff references listing 12.00.  (ECF No. 14 at 8.)  This is likely in error,
considering Plaintiff references listing 12.04 in the table of contents and in the heading of the same

28  section.  (<u>Id.</u> at 2, 8.)

24cv349-GPC (MSB)

### 2. Applicable law

To satisfy listing 12.04 (depressive, bipolar and related disorders), the claimant must satisfy the criteria of either paragraphs A and B or paragraphs A and C.  See 20 C.F.R. § Pt. 404, Subpt. P, App'x 1 § 12.04; see also Cardona v. Kijakazi, No. 20CV226-BLM, 2022 WL 1214707, at *9 (S.D. Cal. Apr. 25, 2022) (defining the legal standard for listing 12.04).  To meet the paragraph A criteria, the claimant must show medical documentation of a mental disorder characterized by at least five of the following symptoms: depressed mood; diminished interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; observable psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; or thoughts of death or suicide.  20 C.F.R. Pt. 404, Subpt. P, App'x § 12.04(A).  To satisfy the paragraph B criteria, the claimant's mental disorder must result in one extreme limitation or two marked limitations in the following areas of mental functioning:

      1. understand, remember, or apply information;
      2. interact with others;
      3. concentrate, persist, or maintain pace; or
      4. adapt or manage oneself.

Id. § 12.04(B).  Finally, to meet the paragraph C criteria, the claimant must demonstrate their mental disorder is "serious and persistent."[11]  Id. § 12.04(C).  The claimant must also show evidence of medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and diminishes the symptoms and signs of their mental disorder, as well as "marginal adjustment."[12]  Id. § 12.04(C).

/ / /

/ / /

---

[11] A claimant's mental disorder is "serious and persistent" when they have "a medically documented history of existence of the disorder" over at least a two-year period.  20 C.F.R. § Pt. 404, Subpt. P, App'x 1 § 12.04(C).

[12] "Marginal adjustment" means "hav[ing] minimal capacity to adapt to changes in [the claimant's] environment or to demands that are not already part of [the claimant's] daily life."  Id.

**3. The ALJ's findings**

At step three of the five-step sequential evaluation process, the ALJ concluded the severity of Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.04.  (AR 20.)  Specifically, the ALJ found Plaintiff's mental impairments do not satisfy the paragraph B or paragraph C criteria. (AR 20–21.)  First, the ALJ found Plaintiff did not satisfy the paragraph B requirements because he does not have at least one extreme or two marked limitations in the four areas of mental functioning.  (Id.)  Second, the ALJ found "the record fails to document the existence of any of [the paragraph C] criteria."  (AR 21.)

**4. Analysis**

A claimant can meet listing 12.04 by satisfying the requirements of either paragraphs A and B *or* paragraphs A and C.  See 20 C.F.R. § Pt. 404, Subpt. P, App'x 1 § 12.04 (emphasis added).  The Court addresses each paragraph in turn.

**a. Paragraph A**

While Plaintiff mentions in passing that "the evidence supports meeting Mental Listing 12.04 paragraph A and C," his Opening Brief focuses solely on whether Plaintiff's mental impairments meet the paragraph C criteria.[13]  (ECF No. 11 at 9–10.)  Courts will not consider claims not actually argued in a plaintiff's opening brief.  See Indep. Towers v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (citing Greenwood v. FAA, 28 F.3d 971, 977 (9th Cir. 1994) ("[W]e cannot 'manufacture arguments for an appellant' and therefore we will not consider any claims that were not actually argued in appellant's opening brief."); see also D.A.R.E. Am. v. Rolling Stone Mag., 270 F.3d 793, 793 (9th Cir. 2001) ("A 'bare assertion' of an issue 'does not preserve a claim.'").  The ALJ's written decision is also silent as to whether Plaintiff meets the paragraph A criteria.  (See AR 17–26.)  The Court therefore cannot determine whether the ALJ found Plaintiff satisfied paragraph A or even considered this issue.  See, e.g., Gwen M. v. O'Malley, No. 23-CV-

---

[13] Similarly, Plaintiff's Reply does not address the paragraph A criteria.  (See generally ECF No. 14.)

24cv349-GPC (MSB)

1562-KSC, 2024 WL 3888906, at *3 (S.D. Cal. Aug. 21, 2024) (declining to assess paragraph A where the ALJ was silent on the issue of paragraph A criteria and neither party addressed it in their briefing).  For these reasons, the Court deems this issue waived.

### b.  Paragraph B

There is substantial evidence in both the medical record and Plaintiff's testimony supporting the ALJ's conclusion that Plaintiff does not satisfy the paragraph B criteria. (See generally AR 20–25.)  To meet the paragraph B criteria, the claimant's mental impairments must result in one extreme limitation or two marked limitations in the four areas of mental functioning.  20 C.F.R. Pt. 404, Subpt. P, App'x § 12.04(B).  With respect to understanding, remembering, or applying information, the ALJ considered Plaintiff's 2021 Adult Disability Report ("2021 ADR"), where Plaintiff reported "he can follow written instructions, albeit with some difficulty, and can follow spoken instructions if they are limited to two-to-three steps."  (AR 20 (citing AR 274).)  The ALJ also considered Plaintiff's 2023 Psychological Evaluation ("2023 PE"), in which Dr. Burr determined Plaintiff has "the ability to understand, remember, and carry out short, simplistic, and detailed instructions."  (Id. (citing AR 564).)  The ALJ concluded this evidence supports a finding that Plaintiff has mild limitations in understanding, remembering, or applying information, meaning his ability to function independently, appropriately, effectively, and on a sustained basis in this functional area is slightly limited.  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(b).

With respect to interacting with others, the ALJ considered Plaintiff's testimony that "he has trouble socializing, getting along with people, and will isolate himself to ensure that he can cope and keep himself out of trouble."  (AR 20.)  The ALJ also considered Plaintiff's 2021 ADR, where Plaintiff reported he "sometimes has issues getting along with authority figures and was fired from a job at FedEx due to a physical altercation with a co-worker."  (Id. (citing AR 273).)  Additionally, the ALJ noted Plaintiff's report that "during a bipolar episode he will argue with his parents, and his

1  social activities with friends [have] been significantly reduced."  (AR 20–21 (citing AR

2  274).)  Finally, the ALJ considered Plaintiff's 2023 PE, in which Dr. Burr determined

3  Plaintiff has "a moderate inability to interact with supervisors, coworkers, and peers."

4  (AR 21 (citing AR 564).)  The ALJ determined this evidence supports a finding that

5  Plaintiff experiences moderate limitations in interacting with others, meaning his ability

6  to function independently, appropriately, effectively, and on a sustained basis in this

7  functional area is fair.  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c).

8      With respect to concentrating, persisting, or maintaining pace, the ALJ considered

9  Plaintiff's testimony that "he has difficulty paying attention, concentrating, and staying

10  focused," but that "he is trying to learn computer programs, like Excel, although he does

11  have some difficulty stating [sic] focused."  (AR 21.)  The ALJ also considered Plaintiff's

12  2023 PE, in which Dr. Burr determined Plaintiff could perform serial sevens and spell the

13  word "music" forward and backward.  (Id. (citing AR 562).)  Further, the ALJ

14  contemplated Plaintiff's 2021 ADR, where Plaintiff reported he can play video games

15  and watch television.  (Id. (citing AR 273).)  The ALJ concluded this evidence supports a

16  finding that Plaintiff has mild limitations in concentrating, persisting, or maintaining

17  pace, meaning his ability to function independently, appropriately, effectively, and on a

18  sustained basis in this functional area is slightly limited.  20 C.F.R. § Pt. 404, Subpt. P,

19  App. 1 § 12.00(F)(2)(b).

20      Lastly, with respect to adapting or managing oneself, the ALJ acknowledged

21  Plaintiff's 2021 ADR reporting he has "no problems with maintaining his personal care,"

22  "can shop in stores independently," and can "drive himself when going out."  (AR 21

23  (citing AR 270, 272).)  The ALJ also considered Plaintiff's 2023 PE, in which Dr. Burr noted

24  Plaintiff drove himself to the appointment and was "appropriately dressed and

25  groomed."  (Id. (citing AR 559–60).)  Further, the ALJ stated the record shows Plaintiff

26  "has a moderate limitation in following normal rules[] and has exhibited some violent

27  behavior while working when confronted with stressors."  (Id. (citing AR 521, 564).)  The

28  ALJ determined this evidence supports a finding that Plaintiff has moderate limitations

24cv349-GPC (MSB)

1    in managing oneself, meaning his ability to function independently, appropriately,

2    effectively, and on a sustained basis in this functional area is fair.  20 C.F.R. § Pt. 404,

3    Subpt. P, App. 1 § 12.00(F)(2)(c).

4          Later in his written decision, the ALJ evaluated the prior administrative medical

5    findings ("PAMFs") of Drs. Barbara Moura and Megan Nicoloff.  (AR 24–25.)  In

6    September 2021, Dr. Barbara Moura, PsyD opined Plaintiff had no limitations in

7    understanding, remembering, or applying information; moderate limitations in

8    interacting with others; mild limitations in concentrating, persisting, or maintaining

9    pace; and moderate limitations in adapting or managing oneself.  (AR 24 (citing AR 68–

10   69).)  The ALJ found Dr. Moura's opinion to be partially persuasive because the ALJ

11   would have found a mild limitation in the functional area of understanding,

12   remembering, or applying information, rather than no limitation.  (AR 24.)  In January

13   2022, Dr. Megan Nicoloff, PsyD opined Plaintiff had no limitations in understanding,

14   remembering, or applying information; mild limitations in interacting with others; mild

15   limitations in concentrating, persisting, or maintaining pace; and no limitations in

16   adapting or managing oneself.  (Id. (citing AR 86).)  The ALJ found Dr. Nicoloff's opinion

17   to be non-persuasive because he felt the record—including evidence received after Dr.

18   Nicoloff provided her opinion—supported a finding that Plaintiff has more severe

19   mental impairments.  (AR 24.)

20         Based on the foregoing, the Court finds there is substantial evidence in the record

21   supporting the ALJ's determination that Plaintiff does not satisfy the paragraph B

22   criteria.  In finding Plaintiff has no extreme or marked limitations in the four areas of

23   mental functioning, the ALJ considered Plaintiff's testimony, Plaintiff's 2021 ADR,

24   Plaintiff's 2023 PE, and PAMFs.  (AR 20–25.)  While Plaintiff presents a different

25   interpretation of the record, the Court is limited to reviewing the Commissioner's

26   decision for legal error or lack of supporting substantial evidence.  See 42 U.S.C. §

27   405(g).  Because the ALJ's interpretation of the evidence is rational and supported by

28   substantial evidence, the Court must uphold the ALJ's decision.  Ahearn v. Saul, 988 F.3d

1  1111, 1115–16 (9th Cir. 2021) (citing Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir.

2  2001) (explaining the court must uphold the ALJ's decision where the evidence can be

3  rationally interpreted); Giulio C. v. O'Malley, No. 23-CV-02768-EJD, 2024 WL 3873980, at

4  *6 (N.D. Cal. Aug. 16, 2024) (internal citations omitted) ("So long as the ALJ's

5  interpretation of the evidence is rational, a court must uphold the ALJ's decision even if

6  there are alternative rational interpretations inconsistent with the ALJ's final decision.").

7                    **c. Paragraph C**

8         The ALJ's determination regarding the paragraph C criteria is not supported by

9  substantial evidence because he provided a single, conclusory statement without citing

10  any evidence.  To satisfy the paragraph C criteria, the claimant must demonstrate their

11  mental disorder is "serious and persistent."  20 C.F.R. Pt. 404, Subpt. P, App'x § 12.04(C).

12  Additionally, the claimant must show evidence of both (1) ongoing medical treatment,

13  mental health therapy, psychosocial support, or a highly structured setting; and (2)

14  marginal adjustment.  Id.  After listing these requirements, the ALJ concluded Plaintiff

15  fails to meet the paragraph C criteria because "the record fails to document the

16  existence of any of these criteria."  (AR 21.)  The ALJ did not provide any further

17  explanation.  (Id.)

18         While ALJs are not required to "draft dissertations" or "perform a line-by-line

19  exegesis" of the claimant's testimony, they must do more than merely state non-specific

20  conclusions when denying disability benefits.  Lambert v. Saul, 980 F.3d 1266, 1277 (9th

21  Cir. 2020) (citing Treichler, 775 F.3d at 1103).  This Court is tasked with reviewing the

22  ALJ's determinations at step three for substantial evidence; the Court cannot perform

23  any review, however, where the ALJ fails to cite any evidence.  See Gwen M., 2024 WL

24  3888906, at *3.  See also Jennifer A. v. O'Malley, No. 23CV326-GPC (LR), 2024 WL

25  400183, at *9 (S.D. Cal. Feb. 2, 2024), report and recommendation adopted sub nom.

26  Jennifer A. v. O'Malley, 2024 WL 1177761 (S.D. Cal. Mar. 19, 2024) (finding error where

27  the ALJ provided a conclusory and boilerplate statement finding that plaintiff failed to

28  meet paragraph C without referencing any medical evidence).  Although Plaintiff and

the Commissioner both argue their positions based on the evidence in the record [see

generally ECF Nos. 11, 13, 14], the Court can only review the grounds asserted by the

ALJ.  Stout, 454 F.3d at 1054 (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

2003).  Thus, because the ALJ did not cite *any* evidence, this renders the ALJ's paragraph

C determination unsupported by substantial evidence.  See Jennifer A., 2024 WL

400183, at *9 ("[D]istrict courts within the Ninth Circuit have routinely concluded that

the [ALJ's] failure to meaningfully engage with the medical evidence at step three, in

combination with [] boilerplate language is an independent basis for remand.")

(collecting cases).

### d.  Harmless error analysis

    Having found error in the ALJ's step three, paragraph C determination, the Court

must evaluate whether the error was harmful or harmless.  Ford v. Saul, 950 F.3d 1141,

1154 (9th Cir. 2020) (citing Tommasetti, 533 F.3d at 1038) (The court "may affirm the

ALJ's decision even if the ALJ made an error, so long as the error was harmless.").  An

error is harmless if it is "inconsequential to the ultimate nondisability determination."

Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015).  Plaintiff bears the burden of

showing harmful error.  Shinseki v. Sanders, 556 U.S. 396, 409–10 (2009).  Additionally,

Plaintiff is responsible for making an initial showing that he meets all the requirements

of a listed impairment.  Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

    Here, the Court finds Plaintiff fails to demonstrate that he meets all the paragraph

C criteria for listing 12.04; thus, the ALJ's error was harmless.  Plaintiff must

demonstrate three elements to satisfy paragraph C: (1) a "serious and persistent"

mental disorder; (2) ongoing medical treatment, mental health therapy, psychosocial

support, or a highly structured setting; and (3) marginal adjustment.  20 C.F.R. § Pt. 404,

Subpt. P, App'x 1 § 12.04(C).  First, neither party disputes that Plaintiff's mental disorder

is "serious and persistent."  (See generally ECF Nos. 11, 13, 14.)  Additionally, the record

reflects that Plaintiff's mental disorder is "serious and persistent" because Plaintiff has a

medically documented history of bipolar II disorder over at least a two-year period.  (See

1    AR 22 ("[C]laimant has a history of recurrent and severe bipolar disorder . . . [and]

2    objective medical evidence indicates a diagnosis of bipolar disorder in March of 2017.");

3    see also AR 323–93, 444–543, 546–57.)

4        Next, Plaintiff argues the record establishes "a long history of psychiatric

5    treatment and hospitalization," sufficient to satisfy the second element of paragraph C.

6    (ECF No. 14 at 7.)  In response, the Commissioner contends that because Plaintiff was

7    not in a highly structured setting for ongoing care, he fails to meet the second element.

8    (ECF No. 13 at 16.)  However, listing 12.04 does not explicitly require a showing of a

9    highly structured setting; Plaintiff can instead satisfy this element by showing evidence

10   of medical treatment, mental health therapy, or psychosocial support that is ongoing

11   and diminishes the signs and symptoms of his mental disorder.  See 20 C.F.R. § Pt. 404,

12   Subpt. P, App'x 1 § 12.04(C).  In his written decision, the ALJ noted the record "indicates

13   intermittent medication and psychotherapy progress notes from Psychiatric Centers of

14   San Diego for a period from January 3, 2019, to August 10, 2022."  (AR 23 (citing AR

15   339–93, 443–50, 451–520, 521–43).)  Further, the ALJ acknowledged Plaintiff was taking

16   prescribed Lithium, Valproic Acid, and Buspar, and seemed to be tolerating them well.

17   (Id. (citing AR 444).)  The ALJ also stated that in September 2021, Plaintiff exhibited a

18   stable mood, indicating the medication was helping.  (Id. (citing AR 444).)  Thus, the

19   record reflects that Plaintiff received ongoing medical care that reduced the severity of

20   his bipolar II symptoms, thereby satisfying the second element of paragraph C.

21        With respect to the third element, Plaintiff does not specifically argue he has

22   achieved "marginal adjustment."  (See generally ECF Nos. 11, 14.)  Instead, Plaintiff

23   asserts he "has not been able to sustain work" and "[h]is medications have increased his

24   manic episodes [] rather than decreased."  (ECF No 11 at 10.)  Conversely, the

25   Commissioner argues Plaintiff has not shown a minimal capacity to adapt to changes.

26   (See ECF No. 13 and 16–17.)  The Commissioner further contends the ALJ's finding that

27   Plaintiff has only a moderate limitation in adapting or managing oneself is inconsistent

28   with a minimal capacity to adapt to changes.  (Id. at 17 (citing AR 21).)

The regulations define "marginal adjustment" as:

[Y]our adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.  We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00G(2)(c).  In his decision, the ALJ noted Plaintiff has no problems maintaining his personal care, shopping in stores independently, driving himself, traveling, and managing his own finances.  (AR 21, 23.) Moreover, the ALJ found Plaintiff's bipolar disorder and associated symptoms "were much better after stopping his petition canvasser job."  (AR 23 (citing AR 546).)  Plaintiff acknowledged the degree of interaction and stress related to his canvasser job were too much for him and said he was considering taking courses to become a licensed tax preparer.  (Id. (citing AR 546).)  Based on the foregoing, the Court finds Plaintiff does not meet the third element of paragraph C because he has not achieved "marginal adjustment" as defined by the regulations.

In sum, although the ALJ's paragraph C determination is unsupported by substantial evidence because he provided only a single, conclusory statement that the record "fails to document the existence of any of these criteria" [AR 21], this finding is nevertheless harmless for two reasons.  First, Plaintiff has not met his burden of affirmatively showing he meets all paragraph C criteria.  Burch, 400 F.3d at 683.  Second, the record shows that Plaintiff has more than a minimal capacity to adapt to changes and thus cannot satisfy the "marginal adjustment" requirement.  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00G(2)(c).  Accordingly, the Court concludes the ALJ did not err in determining Plaintiff does not meet or equal the criteria of listing 12.04.

///

///

24cv349-GPC (MSB)

C. **Whether the ALJ Provided Clear and Convincing Reasons to Discredit Plaintiff's Testimony**

    1. **Parties' arguments**

Plaintiff next argues the ALJ failed to specifically identify what parts of Plaintiff's testimony were not credible and why, and thus his findings are not supported by substantial evidence. (ECF No. 11 at 12–13.) Plaintiff contends the ALJ "did not provide more than a general statement without specific cites"; therefore, he did not provide clear and convincing evidence to support discounting Plaintiff's statements. (Id. at 13.)

In response, the Commissioner argues "[s]ubstantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints." (ECF No. 13 at 7 (citing AR 22–27).) Specifically, the Commissioner contends the "alleged severity of Plaintiff's subjective symptom statements was inconsistent with the objective medical evidence." (Id. (citing AR 22–25).) For example, the Commissioner argues Plaintiff's long stretch of employment as a canvasser is at odds with his alleged need to sequester himself quarterly. (Id. at 10 (citing AR 22–23).) The Commissioner further explains the record showed "Plaintiff's symptoms were improved and stable on medication," which the ALJ considered when evaluating Plaintiff's testimony. (Id. at 11 (citing AR 22–23).) Lastly, the Commissioner argues the ALJ identified Plaintiff's testimony with sufficient specificity and identified record evidence inconsistent with it. (Id. (citing AR 22–23).)

In his Reply, Plaintiff contends the Commissioner's emphasis on Plaintiff's stable behavior is "post hoc," as the Commissioner references evidence of Plaintiff's high and low functioning throughout the record. (ECF No. 14 at 7.) Regardless, Plaintiff argues this evidence does not contradict Plaintiff's testimony and the ALJ has failed to provide clear and convincing reasons to disregard it. (Id.)

    2. **Applicable law**

When evaluating a claimant's allegations regarding subjective symptoms, the ALJ must engage in a two-step analysis. Johnson v. Kijakazi, No. 19-17359, 2022 WL 1553259, at *1 (9th Cir. May 17, 2022); Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir.

24cv349-GPC (MSB)

2009); see also Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304, at *2–3 (S.S.A. Oct. 25, 2017).  First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017) (quoting Garrison v. Colvin, 759 F.3d 995, 1014–15 (9th Cir. 2014)).  The claimant is not required to show that an underlying impairment could reasonably be expected to cause the severity of the pain alleged, but only that it could have reasonably caused some degree of pain.  Vasquez, 572 F.3d at 591 (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)).

Second, if the claimant satisfies the first step and there is no evidence of malingering, then the ALJ may reject the claimant's statements about the severity of their symptoms "only by offering specific, clear and convincing reasons for doing so." Trevizo, 871 F.3d at 678 (quoting Garrison, 759 F.3d at 1014–15).  "The clear and convincing standard is the most demanding required in Social Security cases." Revels, 874 F.3d at 655 (quoting Garrison, 759 F.3d at 1014–15).  General findings are insufficient, and the ALJ must identify which specific symptom statements are being discounted and what evidence undermines those claims.  See Lambert, 980 F.3d at 1277 (citing Treichler, 775 F.3d at 1102); Burch, 400 F.3d at 680.  An ALJ's failure to identify specific statements and explain why they are not credible constitutes harmful error because it precludes meaningful review.  Brown-Hunter, 806 F.3d at 489; SSR 16-3P, 2017 WL 5180304, at *10 ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.").

"[B]ecause symptoms, such as pain, are subjective and difficult to quantify," the ALJ considers "all of the evidence presented," including information about the claimant's prior work record, statements about their symptoms, evidence submitted by their medical sources, and observations by the Agency's employees and other persons.

1  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  Factors the ALJ may consider, in addition to

2  objective medical evidence, include Plaintiff's daily activities; the location, duration,

3  frequency, and intensity of their pain or other symptoms; precipitating and aggravating

4  factors; the type, dosage, effectiveness, and side effects of any medication taken to

5  alleviate pain; treatment; and any other measures used to relieve pain.  <u>See</u> 20 C.F.R. §§

6  404.1529(c)(3), 416.929(c)(3); SSR 16-3P, 2017 WL 5180304, at *7–8.  The ALJ may also

7  consider inconsistencies between Plaintiff's statements and the medical evidence.  <u>See</u>

8  20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

9        **3.  Relevant factual background**

10           **a.  Plaintiff's testimony**

11       In his 2021 Adult Disability Report ("2021 ADR"), Plaintiff reported having "bipolar

12  condition combined with attention deficit disorder."  (AR 269.)  Plaintiff said he has no

13  problem with personal care but uses his "cell phone alarm" for reminders related to

14  personal needs and taking medicine.  (AR 270–71.)  Plaintiff stated he prepares his own

15  meals, including sandwiches, pasta, and frozen dinners.  (AR 271.)  With respect to

16  chores, Plaintiff said he performs light cleaning, laundry, and ironing two to three times

17  per month.  (<u>Id.</u>)  Plaintiff goes outside daily and drives a car; he shops for food and

18  clothes weekly.  (AR 272.)  In terms of social activities, Plaintiff testified he interacts with

19  others in person, on the phone, and through texting one-to-two times per week.  (AR

20  273.)  Plaintiff's conditions have "significantly reduced" his social activities and

21  increased his hobbies of watching TV and playing video games.  (AR 273.)

22       Plaintiff said his conditions affect the following areas: memory, following

23  instructions, completing tasks, getting along with others, and concentration.  (AR 274.)

24  Moreover, Plaintiff experiences frequent bipolar episodes that "affect [his] ability to

25  work and socialize" and "cause high anxiety, depression, [and] mania."  (<u>Id.</u>)  Plaintiff

26  stated he can pay attention for five minutes, has difficulty following written instructions,

27  and can follow spoken instructions if limited to two-to-three steps.  (<u>Id.</u>)  Plaintiff

28  reported he "sometimes" gets along with authority figures and was fired from his job at

1  FedEx "due to [a] physical altercation with [a] co-worker." (Id.) Plaintiff further noted

2  he has difficulty handling stress and struggles with changes in routine. (AR 275.) Lastly,

3  Plaintiff indicated he takes Lithium, Carbamazepine, Buspirone, and Divalproex, and

4  experiences the following side effects: hand shaking, fatigue, and impotence. (AR 276.)

5      At the administrative hearing on February 13, 2023, Plaintiff testified he has

6  difficulty concentrating, paying attention, and staying focused. (AR 36.) Plaintiff stated

7  he has issues socializing and getting along with others and self-isolates to keep himself

8  out of trouble. (Id.) Plaintiff further testified he has problems with short-term memory

9  and takes medication for his psychiatric impairments. (Id.) Plaintiff's medications

10  mitigate his symptoms, but he still experiences episodes. (AR 36–37.) Plaintiff

11  explained his episodes, which occur quarterly during periods of intense stress, usually

12  last one day. (AR 37.) During his episodes, Plaintiff said he tries to "minimize the

13  amount of interaction" he has with people and self-medicates with marijuana. (Id.)

14  Additionally, Plaintiff testified he has problems with tremors in his hands. (AR 38.)

15  When asked what he does throughout the day, Plaintiff replied he "watch[es] a lot of

16  TV" but has been trying to learn Microsoft Excel and other computer programs. (AR 38–

17  39.) Plaintiff said he lives with his parents and completes some chores, including

18  grocery shopping in town. (Id.)

19      Plaintiff also testified about specific episodes he experienced in the workplace.

20  (AR 40–42.) First, Plaintiff said while working as a canvasser collecting signatures, he

21  was arrested after an altercation with a woman and ultimately pled guilty to

22  misdemeanor assault. (AR 40–41.) Second, Plaintiff testified he was fired from his job

23  at Amazon after parking a delivery truck on a hill and failing to engage the parking

24  brake, resulting in the truck rolling down the hill and destroying itself and another

25  vehicle. (AR 41–42.) In the last five years, Plaintiff reported having three 5150 or

26  involuntary holds because of a mental health crisis. (AR 42.) Plaintiff testified, "I lack

27  the ability to stay cool under pressure" and said working in the delivery business is "too

28  much." (AR 43–44.)

1

**b.  Plaintiff's mental health records[14]**

2

In an emergency department record dated December 12–13, 2019 [AR 323–38],[15]

3

Plaintiff's admission diagnosis says: "bipolar disorder, current episode depressed,

4

recurrent severe, without psychotic features."  (AR 323.)  Plaintiff's history of present

5

illness states:

6

> The patient is a 41 years old Male who presents with suicidal ideations.  Of
> note, the patient has a history that incudes ADHD, bipolar disorder, and

7

> marijuana use.  He was brought in by law enforcement today after he

8

> endorsed suicidal ideations to his mother.  Patient reports that last night his

9

> ex-girlfriend of over 1 year left him for a woman.  He states that he has
> "intrusive thoughts due to [his] bipolar disorder" and told his mother he

10

> wanted to kill himself by putting his head on some train tracks in Encinitas.
> Mother became concerned, so patient was brought to the Emergency

11

> Department by police.  The patient denies any "intrusive thoughts" or

12

> suicidal ideations currently, and states he had no intention of killing
> himself.  He notes he recently told a friend he plans to apply for a job.

13

> Patient states he did not take all of his usual medications last night.  He

14

> denies any attempts to overdose.

15

(AR 323–24.)  The examining physician noted, "[Plaintiff] appears to be talkative,

16

hyperverbal, pressured speech, anxious with poor concentration during interview

17

. . . [Plaintiff] report[s] lack of sleep and loss of appetite . . . [Plaintiff] [r]eports

18

history of anxiety and denies other anxiety symptoms suggestive of agoraphobia,

19

panic disorder, specific phobia or social phobia."  (AR 324.)  The physician

20

observed no evidence of a movement disorder, psychotic thought process

21

disorder, loosened associations, flight of ideas, tangential thinking, or rambling of

22

speech.  (Id.)  Lastly, the physician reported Plaintiff's "insight and judgment for

23

routine life events is poor."  (Id.)

24

25

[14] The Court focuses its attention on the records cited in Plaintiff's Opening Brief.  (See ECF No. 11 at 6.)

26

[15] Law enforcement brought Plaintiff to the Palomar Health Emergency Department on December 12, 2019, after he reported suicidal ideations to his mother.  (AR 330.)  Plaintiff was subsequently admitted

27

to the Crisis Stabilization Unit on December 13, 2019, for further evaluation.  (AR 323–26.)  Plaintiff was discharged that same day, following a finding of improvement and stability, as well as no clinical

28

justification for involuntary hospitalization.  (AR 326.)

On January 4, 2023, consultative examiner Dr. J.J. Burr provided a summary report of Plaintiff's Psychological Evaluation ("2023 PE"). (AR 559–64.) Dr. Burr noted Plaintiff was appropriately dressed and groomed. (AR 559–60.) Plaintiff drove himself to the appointment, arrived on time, and was unaccompanied. (AR 559.) Dr. Burr further noted Plaintiff's main complaint was bipolar disorder, and Plaintiff reported having bipolar episodes beginning about eight years ago. (AR 560.) Plaintiff complained these episodes make it difficult for him to function, as he is "sidetracked easily and has trouble getting along with others." (Id.) Dr. Burr also noted Plaintiff reported seeing a psychiatrist approximately every three months since he was five years old, and that he has been psychiatrically hospitalized on three occasions.[16] (Id.) Dr. Burr described Plaintiff's current level of functioning as follows:

> [Plaintiff] is independent in activities of daily living, including dressing, bathing, making meals, doing household chores, and shopping. He is physically able to walk on his own. He has a driver's license, is able to drive, and has a vehicle to drive. He manages his own money with some assistance from his father. He is able to handle daily spending money. His typical day consists of watching television, washing dishes, cleaning [the] house, using the computer, playing video games, and looking for petition jobs. He reported that he is currently working on one in Florida.

(AR 561–62.) Dr. Burr indicated Plaintiff's intellectual functioning on testing was in the low average range and his mood was anxious. (AR 562.) Regarding Plaintiff's memory, Dr. Burr noted Plaintiff was able to recall three out of three objects immediately and one out of three objects after five minutes. (Id.) Dr. Burr found Plaintiff's auditory memory, visual memory, and visual working memory were in the low average range. (Id.) As to Plaintiff's concentration and attention span, Dr. Burr noted Plaintiff could perform serial sevens and spell the word "music" forwards and backwards. (Id.)

---

[16] Dr. Burr noted Plaintiff was first hospitalized in 2008 for two weeks for heavy use of marijuana, and most recently "about 2 years ago, secondary to suicidal ideation after his girlfriend broke up with him." (AR 560.) Dr. Burr did not record details regarding Plaintiff's third hospitalization. (See generally AR 559–64.)

1    Dr. Burr noted the following probable diagnoses: bipolar II disorder and cannabis

2    use disorder.  (AR 563.)  Dr. Burr determined Plaintiff can understand, remember, and

3    carry out short, simplistic, and detailed instructions.  (AR 564.)  Dr. Burr also opined

4    Plaintiff has a mild inability to maintain consistency and pace throughout the day and a

5    moderate inability to follow normal workplace rules.  (Id.)  Dr. Burr stated Plaintiff is at

6    risk for calling in sick, not showing up, or needing to leave early.  (Id.)  Finally, Dr. Burr

7    said Plaintiff has a moderate inability to interact appropriately with supervisors,

8    coworkers, and peers, resulting in some episodes while working.  (Id.)

9                        **c.  The ALJ's findings**

10    The ALJ began his credibility analysis by summarizing various records, including

11    Plaintiff's 2021 ADR, progress notes from 2019 to 2022, and Plaintiff's 2023 PE.  (AR 22–

12    23.)  Consistent with Plaintiff's testimony, the ALJ found "the record does indicate that

13    the claimant has a history of a recurrent and severe bipolar disorder without psychotic

14    features."  (AR 22 (citing AR 323–38).)  He also found "the objective medical evidence,

15    consistent with the claimant's testimony, shows that the claimant has used marijuana

16    habitually since at least 2017, with a self-reported history dating back to 2008."  (AR 23

17    (citing AR 330, 562).)  Although Plaintiff reported to Dr. Burr he had stopped smoking

18    marijuana, the ALJ noted Plaintiff's testimony that he uses marijuana when his bipolar

19    symptoms get intense.  (Id. (citing AR 564).)  The ALJ also noted Plaintiff was

20    hospitalized in December 2019 after reporting suicidal ideations, but later said he was

21    "just 'venting' to his mother" and did not have any intention of killing himself.  (AR 23

22    (citing AR 323–26).)  At the time, Plaintiff confirmed he had a suitable supply of

23    prescription medication, which he was taking regularly to effectively treat his condition.

24    (Id. (citing AR 326).)

25    Additionally, the ALJ found that progress notes from Psychiatric Centers of San

26    Diego dated January 3, 2019, to August 10, 2022, indicated Plaintiff felt in control of his

27    anger and was working as a canvasser in various states from May 2021 to August 2022.

28    (Id. (citing AR 339, 459, 521).)  In September 2021, Plaintiff was noted to have a stable

1  mood, indicating his medication was helping.  (Id. (citing AR 444).)  On August 10, 2022,

2  Plaintiff had an altercation while canvassing for signatures and was arrested with a

3  misdemeanor assault charge.  (Id. (citing AR 521).)  The ALJ observed that progress

4  notes and Plaintiff's testimony indicated he was remorseful for his behavior and

5  acknowledged the degree of interaction and stress related to his work was "too much

6  for him."  (Id. (citing AR 522, 546).)  The ALJ found progress notes dated December 15,

7  2022, reflected Plaintiff's symptoms were "much better" after discontinuing his

8  canvasser job.  (Id. (citing AR 546).)  Further, the ALJ stated progress notes "indicate

9  anxiety attributable to his bipolar disorder," but "there was no indication of depression,

10  insomnia, or delusional thought" and Plaintiff had "normal insight and judgment" and

11  no suicidal ideation.  (Id. (AR 549–51, 556).)

12      Ultimately, the ALJ concluded Plaintiff's "medically determinable impairments

13  could reasonably be expected to cause the alleged symptoms; however, the claimant's

14  statements concerning the intensity, persistence and limiting effects of these symptoms

15  are not entirely consistent with the medical evidence and other evidence in the record

16  for the reasons explained in this decision."  (AR 24.)

17          **4.  Analysis**

18      The Court must engage in the two-step analysis to determine whether the ALJ

19  property discounted Plaintiff's subjective symptom testimony.  See Johnson, 2022 WL

20  1553259, at *1.  To begin, neither party contests the ALJ's finding that Plaintiff has the

21  following severe impairments: bipolar II disorder and cannabis use disorder.  (See AR 20;

22  see generally ECF Nos. 11, 13, 14.)  The ALJ also found that Plaintiff's "medically

23  determinable impairments could reasonably be expected to cause the alleged

24  symptoms."  (AR 24.)  This satisfies the first step of the analysis.  See, e.g., Vasquez, 572

25  F.3d at 591 (finding the ALJ satisfied step one where the "ALJ acknowledged that

26  [plaintiff's] injuries 'could reasonably be expected to produce some of the pain and

27  other symptoms alleged'").  Moreover, neither party alleges evidence of malingering.

28  (See generally ECF Nos. 11, 13, 14.)  Thus, the ALJ may only reject Plaintiff's testimony

1   by providing "specific, clear, and convincing" reasons.  Brown-Hunter, 806 F.3d at 489;

2   see Leza v. Kijakazi, No. 21-16079, 2022 WL 819782, at *2 (9th Cir. Mar. 17, 2022) (citing

3   Garrison, 759 F.3d at 1015).  Additionally, the ALJ "must specifically identify the

4   testimony she or he finds not to be credible and must explain what evidence

5   undermines the testimony."  Holohan v. Massanari, 246 F.3d at 1208.  Failure to do so is

6   harmful legal error.  See Brown-Hunter, 806 F.3d at 492 ("If the ALJ fails to specify his or

7   her reasons for finding claimant testimony not credible, a reviewing court will be unable

8   to review those reasons meaningfully without improperly 'substitut[ing] our conclusions

9   for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions.'") (quoting

10  Treichler, 775 F.3d at 1103).

11      Plaintiff contends the ALJ "did not provide more than a general statement

12  without specific cites" and "did not provide clear and convincing evidence to support

13  disregarding [Plaintiff's] statements."  (ECF No. 11 at 13.)  Aside from this general

14  assertion, Plaintiff does not raise any specific arguments about why the ALJ's

15  assessment of Plaintiff's subjective symptom testimony was erroneous.  (See generally

16  ECF No. 11 at 12–13, ECF No. 14 at 7.)  Plaintiff's failure to meaningfully develop

17  arguments is problematic because the Court can only review "issues which are argued

18  specifically and distinctly in a party's opening brief" and "will not manufacture

19  arguments for an appellant."  Greenwood v. F.A.A., 28 F.3d 971, 977 (9th Cir. 1994)

20  (internal citations omitted).  Thus, it is difficult for the Court to perform a meaningful

21  review where, as here, Plaintiff merely "assert[ed] in declaratory language that the ALJ

22  failed to properly evaluate or improperly discredited evidence."[17]  Meyers v. Berryhill,

23  733 F. App'x 914, 916 (9th Cir. 2018); see also, Janice H. v. O'Malley, No. 22CV1833-W

24  (MSB), 2024 WL 709395, at *8 (S.D. Cal. Feb. 21, 2024), report and recommendation

---

[17] Plaintiff's Reply also fails to "specifically and distinctly" explain why the ALJ failed to provide clear
and convincing reasons for discrediting his testimony.  Greenwood, 28 F.3d at 977.  Plaintiff contends
the Commissioner's arguments about Plaintiff's stable condition are "post hoc," without offering any
further details.  (See ECF No. 14 at 3.)

adopted, 2024 WL 1161707 (S.D. Cal. Mar. 18, 2024) (holding plaintiff failed to demonstrate harmful error where she failed to adequately develop arguments related to her symptom testimony); Valerie P. v. Kijakazi, No. 3:21-CV-01160-SB, 2022 WL 2712956, at *7 (D. Or. July 13, 2022) (same).

Notwithstanding Plaintiff's underdeveloped arguments, the Court finds the ALJ has not met the demanding "clear and convincing" standard for several reasons.  See Brown-Hunter, 806 F.3d at 489.  First, the ALJ generally explained that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms are not entirely consistent with the medical evidence and other evidence of record."  (AR 24.)  This boilerplate introductory language does not comport with the requirement to specifically identify the testimony being discredited.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999) (explaining the ALJ "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints") (internal citations omitted).  As the Ninth Circuit held in Treichler, an ALJ's " 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion is insufficient for [the court's] review."  Treichler, 775 F.3d at 1103 (quoting Vasquez, 572 F.3d at 592).

Second, the ALJ failed to identify specific evidence that contradicted Plaintiff's testimony; instead, he merely stated his conclusion and provided a general summary of the medical and other evidence, without making connections to specific portions of Plaintiff's testimony.  (See AR 21–25.)  "[S]imply reciting the medical evidence in support of [a RFC] determination" does not meet the "clear and convincing" standard for rejecting a plaintiff's testimony.  Brown-Hunter, 806 F.3d at 489; see also Lambert, 980 F.3d at 1278 (holding that a "relatively detailed overview of [plaintiff's] medical history" was not the same as providing clear and convincing reasons for discounting plaintiff's testimony); Silvia S. v. Kijakazi, No. 22CV1880-MSB, 2023 WL 8167205, at *5 (S.D. Cal. Nov. 24, 2023) ("[M]erely reciting the medical record without affirmatively contrasting it

1   to a plaintiff's testimony does not constitute clear and convincing reason."). While it

2   may be possible to draw inferences from the ALJ's summary of the medical evidence, it

3   is not the Court's job to do so. Accordingly, because the ALJ failed to draw connections

4   between the statements he found not credible and evidence undermining these

5   statements, the Court is unable to accurately assess the adequacy of the ALJ's findings.

6           Third, the ALJ's only discernible reason for discrediting Plaintiff's testimony—that

7   the testimony is "not entirely consistent" with the medical and other evidence—does

8   not constitute a clear and convincing reason. (AR 24.) While identification of

9   inconsistencies between a plaintiff's testimony and the medical record may qualify as a

10  clear and convincing reason, see Koch v. Berryhill, 720 F. App'x 361, 364 (9th Cir. 2017),

11  an ALJ is not permitted to rely *solely* on objective medical evidence to discredit a

12  plaintiff's testimony. See 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your

13  statements about the intensity and persistence of your pain or other symptoms or

14  about the effect your symptoms have on your ability to work solely because the

15  available objective medical evidence does not substantiate your statements."); see also

16  Trevizo, 871 F.3d at 679. Here, the ALJ failed to meaningfully identify inconsistencies

17  between Plaintiff's testimony and the record. See Holohan, 246 F.3d at 1208; see Silvia

18  S. v. Kijakazi, No. 22CV1880-MSB, 2023 WL 8167205, at *5 (S.D. Cal. Nov. 24, 2023)

19  ("[M]erely reciting the medical record without affirmatively contrasting it to a plaintiff's

20  testimony does not constitute clear and convincing reason."). Moreover, the ALJ did not

21  identify any other reasons for discounting Plaintiff's subjective symptom testimony.

22  (See AR 21–25.)

23          In conclusion, the Court finds the ALJ erred by failing to identify which of

24  Plaintiff's statements he discredited or providing clear and convincing reasons for doing

25  so. See Brown-Hunter, 806 F.3d at 494 (citation omitted) ("We cannot review whether

26  the ALJ provided specific, clear, and convincing reasons for rejecting [plaintiff's] pain

27  testimony," where, inter alia, "the ALJ never identified which testimony she found not

28  credible.") The ALJ's only discernible reason for discounting Plaintiff's testimony—that

1  his testimony is "not entirely consistent" with the evidence—is not a clear and

2  convincing reason because the ALJ did not identify inconsistencies between Plaintiff's

3  testimony and the record.  Moreover, the ALJ cannot rely solely on medical evidence to

4  discredit subjective testimony.  See 20 C.F.R. § 404.1529(c)(2).  The ALJ's failure to

5  provide clear and convincing reasons for discounting Plaintiff's testimony is not

6  harmless "because it precludes [the Court] from conducting a meaningful review of the

7  ALJ's reasoning."  Brown-Hunter, 806 F.3d at 489.  Therefore, the Court **RECOMMENDS**

8  remand for the ALJ to reevaluate Plaintiff's subjective symptom testimony and

9  specifically identify which portions of it the ALJ finds not credible and why.

10           **D.  Whether the ALJ Met his Burden of Proof at Step Five**

11                **1.  Parties' arguments**

12           Lastly, Plaintiff argues the ALJ erred at step five by not meeting his burden of

13  proof to identify jobs Plaintiff could perform existing in the national economy.  (ECF No.

14  11 at 13–14.)  Plaintiff generally asserts, "[w]here the RFC is inadequate, [the ALJ]

15  cannot meet his burden of proof."  (Id. at 13.)  Plaintiff also argues the vocational expert

16  ("VE") provided an inadequate hypothetical regarding absenteeism.  (Id. at 13–14.)

17  Because two doctors found Plaintiff "would have limitations sustaining work and would

18  have trouble with attendance," Plaintiff contends the ALJ was required to address this

19  issue.  (Id. at 14.)  Furthermore, Plaintiff says the three jobs the ALJ identified require

20  working in a team and taking instructions—tasks that Plaintiff cannot perform because

21  they cannot be done in isolation.  (Id.)

22           In response, the Commissioner argues that consistent with Plaintiff's RFC and the

23  VE's testimony, the ALJ reasonably found Plaintiff could perform a significant number of

24  jobs in the national economy.  (ECF No. 13 at 17–19.)  The Commissioner disputes

25  Plaintiff's contention that Dr. Frost and Dr. Burr found Plaintiff's limitations would

26  prevent him from working due to absenteeism and distraction.  (Id. at 17.)  Specifically,

27  the Commissioner takes issue with Plaintiff's mention of Dr. Frost without citing any

28  support.  (Id. at 17–18.)  Additionally, the Commissioner says Dr. Burr found Plaintiff

would be off task less than ten percent of the time or unexpectedly absent two or more times a month, which the ALJ reasonably distilled into his RFC finding.  (Id. at 18 (citing AR 564).)  Moreover, the Commissioner argues Plaintiff speculates, without providing any support, that the three jobs identified by the VE require supervision and working in a team.  (Id.)  The Commissioner says Plaintiff waived this argument because he failed to raise it at the administrative hearing.  (Id. at 18–19 (citing Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999), as amended (June 22, 1999).)  Regardless, the Commissioner argues the ALJ's step five finding is supported by substantial evidence and should be upheld.  (Id. at 19.)

In his Reply, Plaintiff reiterates that the jobs identified by the ALJ require working in a team and taking instructions based on their definitions in the Dictionary of Occupational Titles ("DOT").  (ECF No. 14 at 8.)  Plaintiff contends all DOT job numbers with "8" as the fifth digit require taking instructions or orders from supervisors and cannot be performed in isolation.  (Id. at 8–9.)  Plaintiff also contends he has not waived this issue because "a step five error . . . only becomes apparent when the ALJ issues a decision." (Id. at 9 (citing Samuels v. Comm'r of Soc. Sec., No. 18cv1872-VKD, at *25 (N.D. Cal. Sep. 18, 2019)).)

### 2.  Applicable law

At step five of the sequential evaluation process, "the burden shifts to the Commissioner to prove that the claimant can perform a significant number of jobs that exist in the national economy given the claimant's [RFC], age, education, and work experience."  Kilpatrick v. Kijakazi, 35 F.4th 1187, 1191 (9th Cir. 2022) (internal citations omitted); see also 20 C.F.R. § 416.966(a).  In making this determination, the ALJ relies on the DOT and the testimony of VEs who testify about specific occupations that a claimant can perform considering their RFC.  See 20 C.F.R. § 416.966(d), (e); Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015); Valentine, 574 F.3d at 689.  "Given its inherent reliability, a qualified vocational expert's testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's

1  step-five finding." Ford, 950 F.3d at 1160 (citing Tackett v. Apfel, 180 F.3d 1094, 1100

2  (9th Cir. 1999)); see also Kilpatrick, 35 F.4th at 1192–93.

3      An ALJ may not "rely on a vocational expert's testimony regarding the

4  requirements of a particular job without first inquiring whether the testimony conflicts

5  with the [DOT]." Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007); see also Policy

6  Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist

7  Evidence, & Other Reliable Occupational Information in Disability Decisions, SSR 00-4P,

8  2000 WL 1898704 (S.S.A. Dec. 4, 2000). Pursuant to SSR 00-4p, the ALJ has an

9  affirmative duty to ask about conflicts between the VE's testimony and the DOT. See

10  SSR 00-4p, 2000 WL 1898704, at *2, *4; Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d

11  996, 1003 (9th Cir. 2015); Massachi, 486 F.3d at 1152–53. If there is a conflict between

12  the VE's testimony and the DOT, "the ALJ must then determine whether the vocational

13  expert's explanation for the conflict is reasonable and whether a basis exists for relying

14  on the expert rather than the DOT." Massachi, 486 F.3d at 1153. Failure to conduct

15  such inquiry is analyzed under the harmless error standard. See Zavalin, 778 F.3d at

16  848; Massachi, 486 F.3d at 1154 n.19 (stating that the error is harmless where "there [is]

17  no conflict, or if the vocational expert ha[s] provided sufficient support for her

18  conclusion so as to justify any potential conflicts.").

19      A conflict between a VE's testimony and the DOT exists when the VE's testimony

20  is obviously or apparently at odds with the DOT's listing of "essential, integral, or

21  expected" job requirements. Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016). The

22  VE's testimony does not conflict with the DOT's listing if the "frequency or necessity of a

23  task is unlikely and unforeseeable." Id. Lastly, an ALJ may rely on VE testimony elicited

24  with a hypothetical question if the hypothetical accurately sets forth all the claimant's

25  limitations. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

26      **3. The VE's testimony and ALJ's treatment thereof**

27      At the administrative hearing on February 13, 2023, the ALJ asked the VE to

28  consider the following hypothetical:

> [A]ssume we have somebody with [Plaintiff's] age, education, past work.
> The only limitations are going to be non-exertional, so we have somebody
> who can understand, remember, carry out unskilled type work.  Short,
> simple job instructions and tasks, simple work, repetitive type work.  In
> addition to that, we can interact appropriately with coworkers, supervisors,
> however the work should be non-collaborative work, no team work, but
> handoffs of work materials and products to coworkers and supervisors,
> that's appropriate and intact.  Additionally, we can respond appropriately
> to supervision, routine work situations and settings and changes.  We
> should have a non-public work setting.  We can appropriately ask
> questions, make decisions, use judgement at the workplace.  And
> concerning the public, it should be non-public type work, however if there
> is incidental contact, brief occasional contact with the public but not job
> related or work-task related contact, that's okay.

(AR 46–47.)  The VE testified that an individual with this profile could not perform

Plaintiff's past work but could perform alternative work.  (AR 47.)  Specifically, the VE

identified three jobs Plaintiff could perform existing in the national economy: (1)

Cleaner II (DOT 919.687-014, medium exertion, 51,546 jobs in the national economy);

(2) Hand Packager (DOT 920.587-018, medium exertion, 78,465 jobs in the national

economy); and (3) Meat Clerk (DOT 222.684-010, medium exertion, 65,572 jobs in the

national economy).  (Id.)  The ALJ then asked the VE to consider a second hypothetical:

> [W]e now have somebody with [Plaintiff's] age, education, past work, but
> for all those capabilities that I just indicated in the first hypothetical, I'm
> going to change those to not able, so I'm going to change it to negative.  So
> . . . everything that I've asked, now it's unable to do all of those elements . .
> . Can any work be performed?

(AR 47–48.)  The VE testified that an individual with this profile could not perform any

work.  (AR 48.)  The VE explained his testimony is consistent with the DOT, but that

"wherein the DOT is silent, in this case with respect to issues of interacting with the

public, coworkers, and supervisors," his testimony is based on his own training,

experience, and expertise.  (AR 48.)  Plaintiff's counsel then asked the VE, considering

the identified jobs, "what is the allowable absenteeism and if a person was off task in a

work place, what would be allowed?"  (Id.)  The VE answered:

Typical employer tolerance in jobs like these for absenteeism is anything less than two days per month.  If one was absent two days a month or more on a consistent basis, that would be work preclusive.  Regarding off-task behavior, typical employer tolerance is anything less than 10%.  If one was off task consistently 10% or more, that would also be work preclusive.

(Id.)  In his written decision, the ALJ determined the VE's testimony was consistent with the information contained in the DOT and a finding of "not disabled" was appropriate. (AR 26.)

### 4.  Analysis

As an initial matter, the Court does not find the Commissioner's assertion that Plaintiff waived his step five argument to be persuasive.  To begin, the Commissioner's reliance on Meanel is misplaced.  In Meanel, the claimant attempted to introduce *new evidence* not previously presented at the administrative hearing.  See Meanel, 172 F.3d at 1115.  By contrast, here, Plaintiff does not attempt to introduce new evidence but rather seeks to address a *legal error* in the ALJ's step five finding.  (See ECF No. 11 at 14 (arguing "the ALJ did not meet his burden of proof at Step Five" and "[t]herefore, the ALJ's findings are not supported by substantial evidence").)  The Ninth Circuit has held that courts may consider arguments raised for the first time on appeal if they are purely questions of law and the Commissioner would not be unfairly prejudiced.  See Silveira v. Apfel, 204 F.3d 1257, 1262 n.8 (9th Cir. 2000).  Moreover, district courts in the Ninth Circuit have regularly applied Silveira's reasoning in holding plaintiffs do not waive their right to appeal an ALJ's step five findings by not initially raising that argument during administrative proceedings.  See e.g., Yvonne W. v. Kijakazi, No. 22CV390-BEN (LR), 2023 WL 4745108, at *17 (S.D. Cal. July 25, 2023), report and recommendation adopted, 2023 WL 11884643 (S.D. Cal. Sept. 18, 2023) (declining waiver of step five argument); Kawther Y. v. Kijakazi, No. 21-CV-01191-BGS, 2023 WL 2766666, at *3 (S.D. Cal. Mar. 30, 2023) (same); Barbee v. Berryhill, No. 16cv1779-BEN (DHB), 2017 WL 3034531, at *12 (S.D. Cal. July 18, 2017), report and recommendation adopted, 2017 WL 3772975 (S.D. Cal. Aug. 31, 2017) (same).  Here, Plaintiff does not seek to introduce new evidence, the

1  alleged error is purely a question of law, and the Commissioner is not unfairly

2  prejudiced because she had an opportunity to respond during this appeal.  Compare

3  Meanel, 172 F.3d at 1115, with Silveira, 204 F.3d at 1262 n.8.  Thus, the Court finds

4  Plaintiff did not waive the issue of whether the ALJ met his burden at step five.

5        Finding no waiver, the Court must determine whether the ALJ's findings at step

6  five are supported by substantial evidence.  Plaintiff primarily argues the ALJ's findings

7  are not supported by substantial evidence because the jobs the VE identified would

8  require Plaintiff to work "with supervision and in a team," which cannot reasonably be

9  done in isolation.  (ECF No. 11 at 13–14.)  Plaintiff also maintains the VE's hypothetical

10  did not adequately capture Plaintiff's absenteeism and distraction concerns, which were

11  noted by two doctors.  (Id.)  These arguments are unavailing.

12        First, Plaintiff does not cite, nor does the Court discern, any authority suggesting

13  the VE's testimony obviously or apparently conflicts with the DOT's descriptions of the

14  three identified jobs.  Gutierrez, 844 F.3d at 808.  The three jobs—Cleaner II, Hand

15  Packager, and Meat Clerk—contain "8" as the fifth digit of their respective DOT

16  occupational codes, which indicates these jobs involve the lowest level of complexity in

17  relating to people.  See DICOT 919.687-014, 1991 WL 687897; DICOT 920.587-018, 1991

18  WL 687916; DICOT 222.684-010, 1991 WL 672129; see also Seth D. v. Kijakazi, No. 22-

19  CV-02051-LL (JLB), 2023 WL 8676095, at *17 (S.D. Cal. Dec. 15, 2023), report and

20  recommendation adopted sub nom. Seth D. v. O'Malley, 2024 WL 130762 (S.D. Cal. Jan.

21  11, 2024).  Level 8 occupations involve "[a]ttending to the work assignment instructions

22  or orders of supervisor" and require "[n]o immediate response . . . unless clarification of

23  instructions or orders is needed."  Appendix B, Explanation of Data, People, Things, 1991

24  WL 688701.  Additionally, each of these jobs are "unskilled," meaning they require only

25  a limited interaction with people.  See DICOT 919.687-014, 1991 WL 687897 (indicating

26  "taking instructions- helping" is "not significant"); DICOT 920.587-018, 1991 WL 687916

27  (same); DICOT 222.684-010, 1991 WL 672129 (same); see also SSR 85-15, 1985 WL

28  56857, at *4 (explaining unskilled jobs "ordinarily involve dealing primarily with objects,

1  rather than with data or people").  This is consistent with the level of social interaction

2  captured by the ALJ in his hypothetical question to the VE.  (See AR 46–47 ("[Plaintiff]

3  can interact appropriately with coworkers, supervisors, however the work should be

4  non-collaborative work, no team work, but handoffs of work materials and products . . .

5  [Plaintiff] should have a non-public work setting . . .  however, if there is incidental

6  contact, brief occasional contact with the public but not job related or work-task related

7  contact, that's okay").)  Similarly, this is consistent with the level of social interaction

8  assessed in the ALJ's RFC determination.  (AR 22 (Plaintiff "can interact with coworkers

9  and supervisors appropriately, however the work should be non-collaborative work and

10  no teamwork.  The claimant can make appropriate and intact handoff of work materials

11  and products to coworkers and supervisors . . . [Plaintiff] should have non-public work,

12  but he can have incidental contact, including brief or occasional contact with the public,

13  so long as it is not job-related contact").)

14      Moreover, the three identified jobs do not include activities an individual with

15  Plaintiff's RFC would be precluded from doing, and Plaintiff does not identify any such

16  activities in support of his arguments.  Pineda v. Comm'r of Soc. Sec., No. 1:22-CV-

17  01287-SAB, 2023 WL 5334984, at *14 (E.D. Cal. Aug. 18, 2023) (finding no conflict

18  between the DOT and VE's testimony where the plaintiff failed to identify activities she

19  could not perform).  Plaintiff also points to no evidence to support his contention that

20  the work must be performed "in isolation."  (See generally ECF Nos. 11 & 14.)  As to

21  Plaintiff's concerns regarding absenteeism and distraction, the Commissioner correctly

22  points out that Dr. Burr "made no indication that Plaintiff would be off-task more than

23  10% of the time or unexpectedly absent two or more times a month," which was the

24  level of employer tolerance the VE noted at the administrative hearing.  (ECF No. 13 at

25  18; AR 48, 564.)  Instead, Dr. Burr opined Plaintiff has a mild inability to maintain

26  consistency and pace; a moderate inability to follow normal workplace rules; and is at

27  risk for calling in sick, not showing up, or needing to leave early.  (AR 564.)  None of

28  these findings suggest Plaintiff would be unable to perform unskilled work involving the

1    lowest level of complexity in relating to people.  The VE accurately set forth Plaintiff's

2    limitations in his testimony; therefore, the ALJ reasonably relied upon the VE's answers.

3    Andrews, 53 F.3d at 1043.

4        In sum, Plaintiff's arguments fall short of identifying an obvious or apparent

5    conflict between the VE's testimony and the DOT descriptions of the three identified

6    positions.  Where there is no obvious conflict, the ALJ has no further duty to reconcile.

7    Gutierrez, 844 F.3d at 807–08; see, e.g., Michael v. Comm'r of Soc. Sec., No. 1:21-CV-

8    00395-SAB, 2022 WL 3999819, at *21 (E.D. Cal. Sept. 1, 2022) (finding no conflict

9    between DOT's description of occasional/frequent reaching and RFC limitation for no

10   overhead reaching, where jobs did not appear to require overhead reaching).  Thus, the

11   Court finds the ALJ satisfied his burden at step five and reasonably relied on the VE's

12   testimony that Plaintiff could perform at least one job existing in significant numbers in

13   the national economy.  Kilpatrick, 35 F.4th at 1191.

14                        **VI.    CONCLUSION**

15       For the foregoing reasons, the Court concludes the ALJ's decision was not free of

16   harmful legal error.  The reviewing court may enter a judgment affirming, modifying, or

17   reversing the Commissioner's decision, or remanding the case to the Social Security

18   Administration for further proceedings.  See 42 U.S.C. § 405(g).  Remand is warranted

19   where additional administrative proceedings could remedy defects in the decision.  Kail

20   v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984)).)  "An automatic award of benefits is a

21   rare and prophylactic exception to the well-established ordinary remand rule."  Leon v.

22   Berryhill, 880 F.3d 1041, 1044 (9th Cir. 2017).

23       The Court finds remand is warranted because additional administrative

24   proceedings could remedy the defects in the ALJ's decision.  Specifically, the Court

25   **RECOMMENDS** that, upon remand, the ALJ: (1) provide a more detailed assessment of

26   Plaintiff's mental limitations when making the RFC determination; (2) re-evaluate

27   Plaintiff's subjective symptom testimony and specifically identify which portions of it, if

28

1    any, the ALJ finds not credible and why; and (3) conduct a new sequential five-step

2    evaluation considering the above and all the evidence in the record.

3        For the foregoing reasons, the Court **RECOMMENDS** that Judgment be entered

4    **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further

5    administrative proceedings consist with this Report and Recommendation.

6        **IT IS ORDERED** that no later than **January 16, 2025**, any party to this action may

7    file written objections with the Court and serve a copy on all parties.  The document

8    should be captioned "Objections to Report and Recommendation."

9        **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the

10   Court and served on all parties no later than **January 23, 2025**.  The parties are advised

11   that failure to file objections within the specified time may waive the right to raise those

12   objections on appeal of the Court's order.  See Robbins v. Carey, 481 F.3d 1143, 1146–

13   47 (9th Cir. 2007); Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

14       **IT IS SO ORDERED.**

15   Dated:  January 2, 2025

16

17                                Honorable Michael S. Berg
                                 United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28