UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER J.,<br><br>                              Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                              Defendant. | Case No.:  24cv349-GPC(MSB)<br><br>**ORDER ADOPTING IN PART<br>REPORT AND<br>RECOMMENDATION AND<br>REVERSING COMMISSIONER'S<br>DECISION AND REMANDING FOR<br>FURTHER PROCEEDINGS** |

On February 22, 2024, Plaintiff Christopher J. ("Plaintiff"), with counsel, filed this action seeking review of the Commissioner of Social Security's final decision denying her application for Social Security Disability[1] benefits under the Social Security Act ("Act").  (Dkt. No. 1.)  After full briefing by the parties, (Dkt. Nos. 11, 13, 14), on January 2, 2025, Magistrate Judge Michael S. Berg issued a report and recommendation ("R&R") for the Court to reverse and remand for further proceedings.  (Dkt. No. 15.) Defendant Commissioner of Social Security, ("Defendant" or "Commissioner"), filed an Objection to the R&R on January 16, 2025.  (Dkt. No. 16.)  Plaintiff filed a reply to the

---

[1] While the complaint seeks to appeal the Commissioner's final decision denying supplemental security income disability benefits, the administrative record does not support this claim.

Objection on January 23, 2025.  (Dkt. No. 17.)  Having carefully reviewed the parties'
briefs, the R&R, the Objection, the reply to the Objection, the administrative record, and
the applicable law, the Court ADOPT in part the R&R, REVERSES the Commissioner's
decision and REMANDS for further proceedings.

## Procedural Background

On May 24, 2021, Plaintiff applied for Social Security benefits under Title II and
Part A of Title XVIII[2] of the Social Security Act, alleging disability due to bipolar
disorder and tremors, beginning on November 1, 2018.  (Dkt. No. 8, Administrative
Record ("AR") 206-07, 239.)  Initially, the Commissioner denied his application on
September 24, 2021, and again upon reconsideration on January 18, 2022.  (AR 98-103;
AR 105-10.)  On January 24, 2022, Plaintiff requested an administrative hearing.  (AR
111-12.)  ALJ Howard Treblin held a telephonic hearing on February 13, 2023.[3]  (AR 32-
50.)  The ALJ heard testimony from Plaintiff and a vocational expert, Jeff Komar.  (AR
32-50.)  In a written decision dated March 10, 2023, the ALJ found Plaintiff had not been
under a disability from November 1, 2018, through the date of the ALJ's decision.  (AR
17-27.)  On May 14, 2023, Plaintiff requested review of the ALJ's decision.  (AR 203-
05.)  The Appeals Council denied Plaintiff's request for review on January 4, 2024, (AR
1-3), making the ALJ's decision final.  42 U.S.C. § 405(g).  This timely civil action
followed.

/ / /

_____

[2] The Court notes that the application for disability insurance benefits includes Plaintiff's statement that
he applied for disability insurance benefits "under Title II and Part A of Title XVIII of the Social
Security Act." (Dkt. No. 8, AR 206.)  Part A of Title XIII of the Social Security Act is commonly
referred to as the "Medicare Act" and "provides insurance for the cost of hospital and related prehospital
claims." *Heckler v. Ringer*, 466 U.S. 602, 605 (1984). The Complaint, Plaintiff's briefs, and the ALJ's
decision are all concerned solely with Plaintiff's application under Title II of the Social Security Act.
The Court therefore limits its discussion to the disputed issue, which is Plaintiff's application under Title
II of the Social Security Act.

[3] The administrative hearing was initially set for September 27, 2022, but was continued to February 13,
2023, to allow for a psychological consultative examination which took place on January 4, 2023. (AR
17, 559-67.)

24cv349-GPC(MSB)

1

## Factual Background

2    Plaintiff, a resident of San Diego, California,[4] was born on October 18, 1978, and

3 was 40 years old at the time of the alleged onset of disability on November 1, 2018.  (AR

4 61-69.)  His highest education is a master's degree.  (AR 35.)  He has past relevant work

5 as a delivery truck driver, administrative clerk, and canvasser.  (AR 40-42; 44-45.)

6    Plaintiff reported he was diagnosed with bipolar at age 5 and began psychiatric

7 care at age 6.  (AR 383.)  In the Adult Disability Report, dated July 14, 2021, Plaintiff

8 listed his bipolar disorder and tremors as medical conditions that limit his ability to work.

9 (AR 238-46.)  Plaintiff indicated he takes Buspirone for his anxiety and Carbamazepine

10 and Depakote for his bipolar disorder.  (AR 241.)  He is being treated by Dr. Nicholas

11 Frost, M.D.  (AR 242.)  He claims his manic episodes of anger and inability to control

12 himself affects his ability to maintain a job.  (AR 242.)  He believes his tremors are

13 possibly related to his medication.  (AR 242.)

14    In the Function Report, dated August 16, 2021, Plaintiff writes that his bipolar

15 disorder with ADHD limit his ability to work.  (AR 269.)  During the day, he watches

16 TV, plays video games and goes shopping by himself.  (AR 270.)  He uses his cell phone

17 alarm to remind him to take his medication and to take care of his personal needs and

18 grooming.  (AR 271.)  He cooks his own meals and does household chores, such as light

19 cleaning, laundry and ironing, about 2-3 times per month.  (AR 271.)  He goes out daily

20 and drives by himself.  (AR 271.)  He is able to handle his money but notes that he often

21 forgets to pay bills and needs reminders from his parents to check his bank account.  (AR

22 272.)  Plaintiff reports he socializes 1-2 times per week but notes his social activities have

23 been significantly reduced due to bipolar symptoms and he has lost many friends.  (AR

24 273.)  He also indicates he has frequent arguments with his parents during his episodes.

25 (AR 273.)  He reports his memory, concentration, following instructions, getting along

26

27 ——————————

28 [4] Plaintiff lives in Pauma Valley, California, within San Diego County.

with others and completing tasks are affected because his bipolar episodes cause high anxiety, depression and mania.  (AR 274.)

In a Third-Party Function Report, Plaintiff's mother reported similar functions and limitations as Plaintiff.  (AR 261-68.)  She states that Plaintiff is bipolar and has ADHD and has been on medication since childhood.  (AR 261.)  She comments that he often looks disheveled and his clothes are not very clean and she sometimes reminds him to change his dirty clothes.  (AR 262-63.)  He uses his cell phone to remind him to take his medication.  (AR 263.)  She reports Plaintiff prepares his own means and can do most household chores but his place is not clean.  (AR 263.)  Plaintiff drives a car by himself and shops in stores for food, clothes and medicine.  (AR 264.)  He manages his own money.  (AR 264.)  Since he is not working, he spends his time watching TV and playing video games.  (AR 265.)  She reports that Plaintiff socializes with others but does not know how often.  (AR 265.)  She also notes that his frequent bipolar episodes and angry outbursts create family issues and he has trouble keeping friends.  (AR 266.)  She states his memory, concentration, completing tasks, following instruction and getting along with others have been impacted by his bipolar disorder, anxiety, depression, mania and ADHD.  (AR 266.)  Specifically, she notes his focus is very poor.  (AR 266.)  She states that he does not handle stress very well and gets very agitated and cannot function and is unable to change routine very well.  (AR 267.)  She also states that he does not always get along with authority figures and has been fired from FedEx for his aggressive behavior.  (AR 267.)

At the hearing on February 13, 2023, Plaintiff testified that he has problems with concentration, paying attention and staying focused as well as has difficulty with short-term memory and socializing with others.  (AR 36.)  He testified that he isolates himself from people to avoid getting into trouble.  (AR 36.)  Plaintiff states he takes medication to mitigate his symptoms and uses other techniques to keep him from getting into trouble.  (AR 37.)  Despite the medication, he still experiences episodes when he is under a lot of stress which occurs quarterly and lasts about a day.  (AR 37.)  He also testified that he

self-medicates with marijuana when it gets really bad to take the edge off.  (AR 37.)  He also states he has tremors in both hands.  (AR 38.)

As to daily living, he testified he watches a lot of TV but has been trying to learn Excel and other computer programs in order to be productive but he is struggling because he is easily distracted.  (AR 39.)  He cooks, cleans and shops for groceries on his own. (AR 39.)  He reported that when he was collecting signatures as a canvasser, a person got into his face about politics and triggered and episode.  (AR 40-41.)  He was subsequently arrested and plead to one count of misdemeanor assault.  (AR 40-41.)  In addition, while working as an Amazon delivery person, he destroyed one of the trucks by parking it on a hill but the vehicle went down a hill and destroyed the truck and another vehicle.  (AR 41-42.)  He lost his job immediately.  (AR 42.)  He also testified he had three 5150 involuntary holds in the past five years.[5]  (AR 42.)

Regarding his work history, Plaintiff worked at FedEx from January 2009 to December 2014.  (AR 250, 277, 279.)  Plaintiff was fired from Fed Ex in 2014 due to a physical altercation with a co-worker.  (AR 274, 277.)  He worked as a package delivery driver for Amazon from August 2018 to November 2018 but was fired when he destroyed an Amazon truck.  (AR 42, 277-78.)  From 2016-2018, he worked part-time gathering signatures for political campaigns and ballot initiatives.  (AR 277, 282.)

In early 2019, Plaintiff began working as a canvasser in the eastern United States. (AR 376, 371.)  In September 2019, Plaintiff stated that he was very stressed while working in canvassing when opposition people took videos of him "hoping to catch him in a mistake."  (AR 489.)  In 2019, Plaintiff reported he an angry outburst in a restaurant when a man confronted him about wearing a MAGA hat.  (AR 366, 495.)  In August 2022, Plaintiff had an altercation while collecting signatures and was arrested with a misdemeanor assault charge.  (AR 521).  By December 2022, Plaintiff stopped working

---

[5] At the consultative exam on January 3, 2023, Plaintiff reported he was psychiatrically hospitalized three times since 2008.  (AR 560.)

24cv349-GPC(MSB)

as a canvasser because it was too stressful and he was relieved to be away from the stress. (AR 546.)  He indicated he was considering changing his job to be a tax preparer and would take a course online.  (AR 546.)

**A.    Medical Evidence**

According to the administrative record, from January 3, 2019 to August 10, 2022, Plaintiff regularly, about every two-three months, met with Dr. Nicholas Frost, M.D. ("Dr. Frost") at Psychiatric Center of San Diego to engage in psychotherapy and medication management.  (AR 339-94; 444-543.)  He continued seeing Dr. Frost at Mindpath Health on September 29, 2022 and December 15, 2022.  (AR 552-57.)

Plaintiff reported that he has been psychiatrically hospitalized on three occasions since 2008.  (AR 560).  Plaintiff was hospitalized in 2008 for two weeks for heavy marijuana use.  (AR 383, 560.)  More recently, on December 12, 2019, Plaintiff was psychiatrically hospitalized on a 5150 hold when his mother alerted the authorities that he wanted to put his head on the Encinitas train tracks after his girlfriend broke up with him. (AR 323.)  He was admitted and discharged the next day after evaluation.  (AR 324, 326.)

When he was admitted, he was slightly disorganized with passive suicidal ideation and the recent break up posed a risk to self at the time.  (AR 325.)  He was educated to continue with medication management and psychotherapy to which he was in agreement. (AR 325.)  Plaintiff said he denied suicidal ideations and that he had no intention of killing himself explaining he was just venting to his mother about the break up.  (AR 323, 325.)  He said he told a friend he plans to apply for a job and did not take all of his usual medications the night before.  (AR 323-24.)  At the time, he was diagnosed with bipolar disorder, current episode depressed, recurrent severe, without psychotic features and adjustment disorder with disturbance of emotion.  (AR 323.)  The medical history notes that Plaintiff has a history of ADHD, bipolar disorder and marijuana use.  (AR 323.)  He also reported taking Depakote and Wellbutrin.  (AR 325.)  On examination, Plaintiff was talkative, hyperverbal, and anxious with poor concentration.  (AR 324.)  He reported feeling depressed and sad due to the break-up and started having suicidal ideation but

denied any plans.  (AR 324.)  He also reported feeling frustrated and overwhelmed causing intrusive thoughts that had been bothering him but he had no intention to act on them.  (AR 324.)  Plaintiff's grooming and personal hygiene were noted as fair, he was alert and superficially cooperative, had good eye contact, was well oriented to time/place and person, while his mood was depressed and affect was labile.  (AR 324.)  Plaintiff's attention span was poor but memory for recent and remote events appeared to be intact.  (AR 324.)  There was no evidence of psychotic thought process disorder and his expressed thoughts were logical, coherent and linear.  (AR 324.)  However, Plaintiff's insight and judgment for routine life events were poor.  (AR 324.)  The next day, Plaintiff denied feeling agitated, had no suicidal ideation, no paranoia and rated his depression as a 3/10 with 10 being the worst.  (AR 326.)  Plaintiff expressed plans to distract himself and find a job and work around the house.  (AR 326.)  He states he plans to see Dr. Frost earlier than his scheduled appointment.  (AR 326.)  The medical record stated he had a low imminent risk of self-harm, with no suicidal ideation, intent or plan and is future oriented and agreeable to follow up care; therefore, an involuntary hold was not justified and he was discharged.  (AR 326.)  On discharge, he was prescribed BuSpar, CarBAMazepine, divalproez sodium extended release and lithium.  (AR 323-24.)

## B.    Consultative Medical Exam

On January 4, 2023, consultative examiner Dr. J.J. Burr, Ph.D  examined Plaintiff for a psychological evaluation.  (AR 559–64.)  Dr. Burr stated that Plaintiff drove himself to the appointment unaccompanied, arrived on time, and was appropriately dressed.  (AR 559-60.)  Plaintiff reported his "main complaint" was bipolar disorder with episodes beginning about eight years ago.  (AR 560.)  He also reported that he always had ADHD and with the bipolar "episodes", it has made it difficult to function because he is easily distracted and has trouble getting along with others.  (AR 560.)  He states his episodes happen quarterly.  (AR 560.)  Dr. Burr described Plaintiff's current level of functioning as follows:

> [Plaintiff] is independent in activities of daily living, including dressing, bathing, making meals, doing household chores, and shopping. He is physically able to walk on his own. He has a driver's license, is able to drive, and has a vehicle to drive. He manages his own money with some assistance from his father. He is able to handle daily spending money. His typical day consists of watching television, washing dishes, cleaning [the] house, using the computer, playing video games, and looking for petition jobs. He reported that he is currently working on one in Florida.

(AR 561–62.) Dr. Burr's mental status examination indicated Plaintiff's intellectual functioning on testing was in the low average range and his mood was anxious. (AR 562.) Plaintiff was able to recall three out of three objects immediately and one out of three objects after five minutes. (*Id.*) Dr. Burr found Plaintiff's auditory memory, visual memory, and visual working memory were in the low average range. (*Id.*) As to Plaintiff's concentration and attention span, Dr. Burr noted Plaintiff could "perform serial sevens" and "spell the word 'music' forwards and backwards." (*Id.*)

Dr. Burr stated the following probable diagnoses: bipolar II disorder and cannabis use disorder, noting Plaintiff had reported recent remission from cannabis use. (AR 563.) The Wechsler Adult Intelligence Scale IV, Wechsler Memory Scale IV and Trail Making Test showed Plaintiff's overall cognitive ability was in the low average range. (AR 564.)

Dr. Burr determined the following:

> Based on today's assessment, the claimant presents with the ability to understand, remember, and carry out short and simplistic instructions. He presents with the ability to understand, remember, and carry out detailed instructions. The claimant presents with the ability to make simplistic work-related decisions without special supervision. He has a mild inability to maintain consistency and pace throughout the day. He has a moderate inability to follow normal rules of the workplace. He is at risk for calling in sick, not showing up, or needing to leave early.
> The claimant has a moderate inability to interact appropriately with supervisors, coworkers, and peers. He has had some 'episodes' of altercations while on the job.

1    (AR 563.)

2    **C.    The ALJ's Decision**

3         For the purposes of the Social Security Act, a claimant is disabled if she is unable

4    "to engage in any substantial gainful activity by reason of any medically determinable

5    physical or mental impairment which can be expected to result in death, or which has

6    lasted or can be expected to last for a continuous period of not less than 12 months."  42

7    U.S.C. § 423(d)(1)(A).  To determine whether a claimant meets this definition, the ALJ

8    employs a five-step sequential evaluation.  20 C.F.R. § 404.1520(a).

9         In brief, the ALJ considers whether the claimant is disabled by determining: (1)

10   whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has

11   a "severe, medically determinable physical or mental impairment . . . or a combination of

12   impairments that is severe" and that has lasted for more than 12 months; (3) whether the

13   impairment "meets or equals" one of the listings in the regulations; (4) whether, given the

14   claimant's residual functional capacity ("RFC"), the claimant can still do his or her "past

15   relevant work"; and (5) whether the claimant "can make an adjustment to other work."

16   20 C.F.R. § 404.1520(a)(4)(i)-(v).  At steps four and five, the ALJ determines a

17   claimant's RFC.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  The burden of

18   proof is on the claimant at steps one through four but shifts to the Commissioner at step

19   five.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

20        Here, the ALJ applied the five-step sequential framework to determine that

21   Plaintiff is not disabled.  (AR 17-27.)  At step one, the ALJ found that Plaintiff has not

22   engaged in substantial gainful activity since November 1, 2018, the alleged onset date of

23   disability.[6]  (AR 19.)  At step two, the ALJ found that Plaintiff has the following severe

24   impairments: bipolar II disorder and cannabis use disorder.  (AR 20.)  At step three, the

25

26

27   [6] Plaintiff worked after the alleged onset date in 2019-2021, but it "did not rise to the level of substantial

28   gainful activity" because his earnings did not exceed the requisite monthly amount for those calendar
     years.  (AR 19); *see also* 20 C.F.R. § 404.1574.

ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)  The ALJ found Plaintiff's mental impairments do not meet the criteria of both paragraphs B and C of listing 12.04 (depressive, bipolar and related disorders). (AR 20-21.)  With respect to the paragraph B criteria, the ALJ found that Plaintiff has mild limitations in: (1) understanding, remembering, or applying information; and (2) concentrating, persisting, or maintaining pace. (*Id.*)  The ALJ also found that Plaintiff has moderate limitations in: (1) interacting with others; and (2) adapting or managing oneself. (*Id.*)  The ALJ determined the paragraph B criteria are not satisfied because Plaintiff's "mental impairments do not cause at least two marked limitations or one extreme limitation." (AR 21.)  Moreover, the ALJ determined the record "fails to document the existence" of any paragraph C criteria. (*Id.*)

The ALJ determined that Plaintiff has the RFC to do the following:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: understand, remember, carryout unskilled type work, with short and simple job instructions and tasks, consistent with simple and repetitive type work. [Plaintiff] can interact with coworkers and supervisors appropriately, however the work should be non-collaborative work and no teamwork. [Plaintiff] can make appropriate and intact handoff of work materials and products to coworkers and supervisors. [Plaintiff] can respond appropriately to: supervision; routine work situations; settings; changes and would need a non-public work setting. He can make appropriate decisions, ask questions, and use judgment. [Plaintiff] should have non-public work, but he can have incidental contact, including brief or occasional contact with the public, so long as it is not job-related contact.

(AR 21–22.)  Moreover, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 24.)

At step four, given Plaintiff's RFC, the ALJ determined that Plaintiff is unable to perform any past relevant work.[7]  (AR 25.)  In making this determination, the ALJ noted the vocational expert ("VE") testified an individual with Plaintiff's RFC would be unable to perform the past relevant work as generally performed.  (*Id.*)  Finally at step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (AR 26.)  Considering the VE's testimony, the ALJ determined that Plaintiff could perform the following jobs: Cleaner II, DOT Code: 919.687-014, medium exertional capacity, SVP 1; Hand Packager, DOT Code: 920.587-018, medium exertional, SVP 2; and Meat Clerk, DOT 222.684-010, medium exertional, SVP 2.  (AR 26.)  The VE noted that in the types of jobs identified, the tolerance for absenteeism and distraction is low.  (AR 48.)  As such, the ALJ concluded Plaintiff has not been under a disability as defined in the Social Security Act from November 1, 2018, through the date of the decision, March 10, 2023.  (AR 26-27.)

Discussion

**A.    Standards of Review**

      **1.    Standard of Review of Magistrate Judge's Report and Recommendation**

The district court's duties in connection with an R&R from a magistrate judge are set forth in Federal Rules of Civil Procedure 72(b) and 28 U.S.C. § 636(b).  The district court "may accept, reject or modify, in whole or in part, the findings and recommendations made by the magistrate."  28 U.S.C. § 636(b); *see Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121–22 (9th Cir. 2003) (*en banc*).  However, the district court must conduct a *de novo* review of any part of the R&R that has been objected to.  Fed. R. Civ. P. 72(b)(3).  Here,

---

[7] Plaintiff's past relevant work includes Light Truck Driver, Dictionary of Occupational Titles ("DOT") Code: 906.683- 022, medium exertional capacity, SVP 3; Administrative Clerk, DOT Code: 216.362-010, light exertional capacity, SVP 5; and Survey Work, DOT Code: 205.367-054, light exertional capacity, SVP 2.

Defendant filed an Objection to the Magistrate Judge's R&R; thus, the Court will conduct a *de novo* review of the Commissioner's final decision.  (Dkt. No. 16.)

### 2.     Standard of Review of Commissioner's Final Decision

Section 205(g) of the Act permits unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. § 405(g).  The reviewing court may enter a judgment affirming, modifying, or reversing the Commissioner's decision, and may also remand the matter to the Commissioner of Social Security for further proceedings.  *Id.*

The scope of the reviewing court is limited; it may "set aside the ALJ's denial of benefits only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (internal quotations omitted).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  However, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## B.     Analysis

### 1.     Paragraph C Criteria Under Listing 12.04

Plaintiff argues the ALJ merely used boilerplate language and did not properly address the paragraph C criteria under listing 12.04 at step three of the evaluation process.  (Dkt. No. 11 at 9–10.[8])  In response, the Commissioner argues the ALJ reasonably found Plaintiff did not meet or equal the criteria of any disability listing, including listing 12.04, and substantial evidence supports the ALJ's step three finding.  (Dkt. No. 13 at 14–17.)

---

[8] Page numbers are based on the CM/ECF pagination.

24cv349-GPC(MSB)

1    At step three of the sequential evaluation process, the ALJ considers whether one

2    or more of the claimant's impairments meets or equals any of the impairments listed in

3    20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "listings").  20 C.F.R. § 404.1520(a)(4)(iii).  The

4    listings "define impairments that would prevent an adult, regardless of his age, education,

5    or work experience, from performing any gainful activity, not just 'substantial gainful

6    activity.'"  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citing 20 CFR § 416.925(a)).

7    The listings include impairments which qualify as severe enough to be construed as a

8    presumption of disability that makes any additional inquiry unnecessary.  *Id.*  "For a

9    claimant to show that his impairment matches a listing, it must meet *all* of the specified

10    medical criteria. An impairment that manifests only some of those criteria, no matter how

11    severely, does not qualify."  *Id.* at 530 (emphasis in original).

12    To satisfy listing 12.04 (depressive, bipolar and related disorders), the claimant

13    must satisfy the criteria of either paragraphs A and B or paragraphs A and C.  20 C.F.R.

14    Pt. 404, Subpt. P, App'x 1 § 12.00(A)(2).  Here, Plaintiff does not challenge the ALJ's

15    findings as to the paragraph B criteria; instead, he argues that the ALJ failed to evaluate

16    the paragraph C criteria.[9]

17    Paragraph C provides an alternative means of demonstrating disability for those

18    claimants who experience "serious and persistent mental disorders" and whose "more

19    obvious symptoms" have been controlled by medication and mental health interventions.

20    20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(1).  To satisfy paragraph C criteria, a

21    claimant must show that his mental impairment has existed for at least two years, and that

_____

[9] While Plaintiff summarily concludes "the evidence supports meeting Mental Listing 12.04 paragraph A and C,", he did not provide any argument as to paragraph A.  (Dkt. No. 11 at 10.)  The Court will not address paragraph A as it was not argued in Plaintiff's opening brief.  *See Indep. Towers v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("[W]e cannot 'manufacture arguments for an appellant' and therefore we will not consider any claims that were not actually argued in appellant's opening brief.")).  Further, the ALJ did not make findings regarding the paragraph A criteria but instead found that Plaintiff was not entitled to benefits at step three because he did not meet any of the paragraph B or paragraph C criteria.

(1) he relied "on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of [his] mental disorder" and (2) despite [his] diminished symptoms and signs, [he has] achieved only marginal adjustment[]" meaning "that his adaption to the requirements of daily life is fragile; that is [he has] minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(2)(b)-(c).

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). While a "boilerplate finding is insufficient to support a conclusion that a claimant's impairment" does not meet or equal a listing, *Id.* at 512 (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)), the Ninth Circuit explained that "*Marcia* simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings.'" *Id.* at 513.

In *Gonzalez,* the Ninth Circuit rejected the appellant's argument that the "Secretary committed error by failing to discuss why he did not satisfy the Listing of Impairments" and held the multi-page, single-spaced summary of the record reciting the medical records and summarizing the appellant's testimony where the ALJ stated that the record substantiated some of appellant's complaint was not error. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). In that case, and similar to this case, the ALJ did not "state what evidence supported the conclusion that appellant's impairments d[id] not meet or exceed the Listing of Impairments." *Id.* at 1200. The court explained that it is unnecessary for the ALJ to explain why a claimant failed to satisfy every section of the listing of impairments, and a four-page "evaluation of the evidence" was an adequate statement of the "foundations on which the ultimate factual conclusions are based." *Id.*; *Kruchek v. Barnhart*, 125 Fed. A'ppx. 825, 827 (9th Cir. 2005) (adequately analyzed evidence elsewhere in decision); *Evenhus v. Astrue*, 815 F. Supp. 2d 1154 (D. Or. Aug.

2011) (ALJ properly assessed listing even though he did not discuss the findings in the paragraph addressing the listings because "ALJ thoroughly examined and detailed the medical evidence of record in the pages following his findings with respect to the listing criteria . . . ."); *Harris v. Astrue*, No. CV 08–0831 JSW, 2009 WL 801347, at *7 (N.D. Cal. Mar. 25, 2009) (discussion and evaluation of evidence at step four supported ALJ's step three conclusion that impairments did not equal Listing 1.04).

Here, the ALJ addressed the standard to meet paragraph C criteria and then using boilerplate language concluded that "the record fails to document the existence of these criteria." (AR 21.)  While the discussion as to the elements of paragraph C are not expressed under the step 3 analysis, the ALJ conducted a detailed analysis of Plaintiff's mental condition to support his paragraph C conclusion.  (AR 22-23.)  Because the ALJ's evaluation of the evidence reveals that Plaintiff had not demonstrated marginal adjustment, substantial evidence supports the ALJ's conclusion that the paragraph C criteria was not satisfied.  *See Sullivan*, 493 U.S. at 530 (a claimant must meet all criteria to satisfy paragraph C).

A plaintiff must demonstrate that "despite [his] diminished symptoms and signs, [he has] achieved only marginal adjustment[]" meaning "that his adaption to the requirements of daily life is fragile; that is [he has] minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(2)(c).  A plaintiff can demonstrate marginal adjustment "when the evidence shows that changes or increased demands have led to exacerbation of [plaintiff's] symptoms and signs and to deterioration in [plaintiff's] functioning, for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports."  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00G(2)(c).

The ALJ found Plaintiff has a moderate limitation in interacting with others based on Plaintiff's reports of difficulty socializing, that he has had past issues with co-workers at FedEx, and engages in arguments with his parents.  (AR 20-21.)  Even though he was

hospitalized due to his bipolar symptoms in December 2019, Plaintiff explained that he did not have any intention of killing himself and when he was discharged the following day, he planned on finding a job and working around the house.  (AR 23.)  His medication was also effective in treating his symptoms.  (AR 23.)  Further, the ALJ found that he has moderate limitations in adapting or managing himself noting that he can maintain his personal care, can shop in stores independently, drives himself, travels independently, and manages his own finances, (AR 21, 23), but recognized that he has moderate limitation in following normal rules, and exhibited some violent behavior while working under stress.  (AR 21.)  Despite these moderate limitations, the ALJ noted that Plaintiff was able to travel between May 2021 to August 10, 2022 to Colorado, Massachusetts, Michigan and Florida for his job as a canvasser.  (AR 23.)  Even though, on August 10, 2022, he had an altercation while collecting signatures and was arrested with a misdemeanor assault charge, the medical records reveal that he was remorseful for his behavior and the degree of interaction and stress related to the work due to the increase in agitation in politics was too much for him.  (AR 23.)  Therefore, after leaving his job as canvasser, his symptoms were much better and he was considering taking classes to become a licensed tax preparer.  (AR 23.)  The ALJ's discussion of Plaintiff's testimony, his prior work history, prior hospitalization, and managing his daily life support his conclusion that the paragraph C criteria were not satisfied as to marginal adjustment.  *See Craig N. v. Saul*, Case No. 19-cv-05235-TSH, 2020 WL 4284845, at *22 (N.D. Cal. 2020) (Plaintiff showed more than marginal adjustment who "has been able to live alone for years with only minor support, without any evidence of exacerbation of his symptoms or deterioration in his functioning due to changes in his environment."); *Susan O. v. Comm'r, Soc. Sec. Admin.*, 3:18-cv-02192-BR, 2019 WL 6499126, at *6 (D. Or. 2019), *aff'd by Ozolins v. Saul,* 849 Fed. App'x 682, 683 (June 9, 2021) (Plaintiff had more than minimal capacity to adapt to changes where "the record reflects Plaintiff planned her wedding, left her house regularly for appointments and to shop in addition to traveling extensively.").

16

1    Thus, the Court concludes that substantial evidence supports the ALJ's conclusion

2    that Plaintiff's mental impairments do not the paragraph C criteria.

3    **2.     Moderate Mental Impairments and RFC Analysis**

4    Plaintiff argues the ALJ's RFC determination did not address Plaintiff's paragraph

5    B criteria's moderate mental limitations of (1) interacting with others; and (2) adapting or

6    managing oneself; therefore, the RFC is not supported by substantial evidence.  (Dkt. No.

7    11 at 10–11.)  In particular, Plaintiff contends his "[m]oderate limitations cannot be

8    addressed by limiting work to simple routine work with limited contact."  (*Id.* at 11.)  In

9    response, the Commissioner contends the ALJ's RFC determination "reasonably captured

10   [Plaintiff's] alleged limitations with respect to memory, being around strangers, and

11   concentrating."  (Dkt. No. 13 at 13.)

12   Under the Regulations, residual functional capacity "is the most you can still do

13   despite your limitations."  20 C.F.R. § 404.1545(a)(1).  Where there is more than one

14   impairment, the Commissioner "will consider all of [the claimant's] medically

15   determinable impairments of which we are aware, including your medically determinable

16   impairments that are not 'severe,' . . . when we assess your residual functional capacity."

17   20 C.F.R. § 404.1545(a)(2).

18   At step three, the ALJ must consider the four broad functional areas of mental

19   functioning, also known as the "paragraph B" criteria, and include (1) "[u]nderstand,

20   remember, or apply information;" (2) "interact with others;" (3) "concentrate, persist, or

21   maintain pace;" and (4) "adapt or manage oneself".  20 C.F.R. § 404.1520a(c)(3).  The

22   five-point scale include, "None, mild, moderate, marked, and extreme."  20 C.F.R. §

23   404.1520a(c)(4).

24   Here, at step two, the ALJ found Plaintiff had severe impairments of bipolar II

25   disorder and cannabis use disorder.  (AR 20.)  The ALJ further concluded that Plaintiff's

26

27

28

tremors,[10] anxiety, mood swings, and attention deficit hyperactivity disorder ("ADHD") were non-severe, yet he considered all of Plaintiff's "medically determinable impairments, including those that are not severe, when assessing [Plaintiff's] residual functional capacity." (AR 20.) Then at step three, the ALJ assessed the four broad functional areas of mental functioning, or paragraph B criteria, and found Plaintiff had "mild limitations" in understanding, remembering, or applying information, "moderate limitations" with interacting with others, "mild limitations" in concentrating, persisting, or maintaining pace, and "moderate limitations" in adapting or managing himself. (AR 20-21.) Based on this, the ALJ found that paragraph B criteria were not met. Plaintiff does not dispute the ALJ's findings on the paragraph B criteria.

Subsequently, in boilerplate language, the ALJ acknowledged that the "limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at step 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 . . . requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (AR 21.) Next, at step four, the ALJ found Plaintiff has the RFC to perform a full range of work with the following non-exertional limitations:

> [1] can understand, remember, carry out unskilled type work, with short and simple job instructions and tasks, consistent with simple and repetitive type work[;] [2] can interact with coworkers and supervisors appropriately, however the work should be non-collaborative work and no teamwork[;] [3] can respond appropriately to: supervision; routine work situations; settings; changes and would need a non-public work setting[;] [4] can make appropriate decisions, ask questions, and use judgment[;] [and] [5] should have non-

---

[10] Plaintiff reported he has tremors in both hands. (AR 38.) At a June 20, 2019 visit with Dr. Frost, Plaintiff was negative for tremors since he stopped his AM Lithium, (AR 366, 368); however, at the hearing, he was still exhibiting bilateral tremors. (AR 38.)

1    public work, but he can have incidental contact, including brief or occasional

2    contact with the public, so long as it is not job-related contact.

3    (AR 21–22.)  In making this RFC determination, the ALJ stated he considered "all

4    symptoms and the extent to which these symptoms can reasonably be accepted as

5    consistent with the objective medical evidence and other evidence" and "medical

6    opinion(s) and prior administrative medical finding(s)."  (*Id.*)

7        An assessment of the limitations in the paragraph B criteria at step two and three

8    and RFC at step four and five of the sequential evaluation are distinct.  Social Security

9    Ruling ("SSR") 96-8p, 1996 WL 374184, at *4 ("[T]he limitations identified in the

10   paragraph B and paragraph C criteria are not an RFC assessment.").  Paragraph B criteria

11   are used to rate the severity of a claimant's mental impairments at steps two and three

12   under the listings.  SSR 96-8p, 1996 WL 374184, at *4.  The RFC assessment requires "a

13   more detailed assessment" than what is required at step two and three.  *Id.; see Kimball v.*

14   *Comm'r of Soc. Sec.*, Case No. 1:21-cv-01548-EPG, 2022 WL 17343820, at *5-6 (E.D.

15   Cal. Nov. 30, 2022) ("While similar evidence may be used in both assessments of

16   Plaintiff's mental impairments, they are distinct, and limitations assessed in the context of

17   the paragraph B assessment are not necessarily transferable to the more detailed

18   assessment required when formulating the RFC. The ALJ's task when assessing the RFC

19   is not to provide an adequate explanation for how the RFC accommodates the ALJ's

20   paragraph B findings, but rather to perform a new, more detailed assessment

21   incorporating all the relevant evidence.") (quoting *JW U.C. v. Comm'r of Soc. Sec.*,

22   CASE NO. 2:19-CV-00090-DWC, 2019 WL 3451515, at *2 (W.D. Wash. July 31,

23   2019)).  As such, "a direct translation of the findings for the broad functional areas at step

24   three into the concrete, functional limitations that must be identified in the RFC is

25   untenable."  *Garza v. Comm'r of Soc. Sec.*, Case No. 1:21-cv-00403-BAK (SAB) 2022

26   WL 2974691, at *7 (E.D. Cal. July 27, 2022) ("Plaintiff's argument that the Court must

27   find the ALJ erred because he did not expressly mimic this same limiting language in the

28   instant RFC determination—regardless of whether the RFC limitations adequately

19

address the paragraph B criteria findings and the medical records through other language—fails."); *Schneider v. Comm'r Soc. Sec. Admin.*, 433 Fed. App'x 507, 509-10 (9th Cir. 2011 ) (ALJ reasonably translated diagnosis that claimant "was expected to have significant difficulties in maintaining normal social interactions" due to "stress and anxiety" and adequately addressed all limitations by issuing RFC which limited claimant to "unskilled work with no public contact and minimal social interactions with co-workers," even though it did not expressly include inability to interact with "supervisors").

Therefore, the relevant inquiry into an ALJ's translation of the moderate limitations found in paragraph B to a functional limitation in the RFC is whether the RFC limitations are supported by medical evidence. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence or pace where the assessment is consistent with restrictions identified in the medical testimony."); *see Israel v. Astrue*, 494 F. App'x 794, 796 (9th Cir. 2012) (ALJ properly translated moderate limitations into concrete restriction in RFC by drawing on restrictions identified in the medical testimony). In *Rogers,* the ALJ found the claimant had "moderate" difficulties at step three in the paragraph B area of social functioning and the claimant argued that the ALJ erred because the RFC did not include limitations that expressly addressed social functioning. *Rogers v. Comm'r of Soc. Sec. Admin.*, 490 Fed. App'x. 15, 17 (9th Cir. 2012). Instead, the RFC determined the claimant could perform work limited to simple routine tasks performed in unskilled work despite her social functional moderate difficulties. *Id.* Nonetheless, the Ninth Circuit held all of the claimant's limitations were adequately captured in the RFC determination because it was consistent with the limitations in work-related abilities identified by the medical opinions in the record. *Id.* at *17–18 (citing *Stubbs-Danielson*, 539 F.3d at 1174).

Here, the ALJ relied on the psychological consultative examiner, Dr. Burr, who determined that Plaintiff can understand, remember and carry out short and simple as

well as detailed instructions and make simple work-related decisions without supervision. (AR 25; *see also* AR 564.)  Dr. Burr also opined that Plaintiff has a moderate inability to follow normal rules in the workplace and moderate inability to interact appropriately with supervisors, coworkers, and peers due to a history of episodes.  (AR 25; *see also* AR 574.)   In the RFC determination, the ALJ limited Plaintiff's work to understand, remember and carryout unskilled work with short and simple job instructions and tasks and that the work should be non-collaborative and no teamwork as well as the work should be in a non-public work setting.  (AR 22.)  The RFC finding is consistent with the medical reports and adequately captures Plaintiff's limitations in interacting with others and managing himself.  Therefore, the Court concludes that the ALJ's RFC determination is supported by substantial evidence as it concerns Plaintiff's paragraph B criteria.

### 3.    ALJ's Credibility Determination

Plaintiff next argues the ALJ provided only a boilerplate statement and failed to provide specific, clear and convincing reasons to reject Plaintiff's symptom testimony. (Dkt. No. 11 at 12-13.)  In response, the Commissioner argues that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints because the ALJ showed his work and his rationale for discounting Plaintiff's symptom reports.  (Dkt. No. 13 at 7.)

When evaluating allegations regarding subjective symptoms, the ALJ must engage in a two-step analysis.  *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* (quoting *Garrison*, 759 F.3d at 1014-15).  Second, if "the claimant satisfies the first step and there is no evidence of malingering, then the ALJ may reject the claimant's statements about the severity of their symptoms only by offering specific, clear and convincing reasons for doing so."  *Id.* (quoting *Garrison*, 759 F.3d at 1014-15); *see also Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may

only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In *Brown-Hunter*, the Ninth Circuit held that "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Therefore, in this circuit, "[t]o ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Id.*

It is not sufficient for the ALJ to make a "single general statement that 'the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014). It is also not sufficient for the ALJ to state a claimant's testimony is not credible and then summarize the medical evidence supporting the RFC determination. *Brown-Hunter*, 806 F.3d at 494. In *Brown-Hunter,* the court noted that the district court made reasonable inferences of inconsistencies from the ALJ's summary of the evidence to affirm the Commissioner's decision; however, "the credibility determination is exclusively the ALJ's to make, and [the courts] only to review." *Id.* Therefore, even though the district court's decision was sound, the ALJ's error remained. *Id.*

Similarly, in *Lambert,* the Ninth Circuit held that the ALJ erred by failing to provide sufficient reasons for rejecting the claimant's testimony. *Lambert v. Saul*, 980 F.3d 1266, 1277 (2020). Even though the district court improperly attempted to fill in the ALJ's reasoning citing portions of the record suggesting that Lambert's subjective pain

complaints were not credible, the "district court's efforts to shore up the ALJ's decision, while understandable, was unavailing." *Id.* at 1278. Further, in *Lambert*, even though the ALJ provided four reasons[11] that the claimant's testimony was "less than fully consistent with the evidence", they were held not to be specific, clear and convincing reasons. *Id.* at 1277. Therefore, an ALJ must "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter*, 806 F.3d at 493.

In this case, there is no evidence of malingering, and after assessing the medical record and Plaintiff's symptom testimony, the ALJ used boilerplate language concluding that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 24.) Besides this boilerplate language, the ALJ failed to identify any testimony that was not credible, did not identify any express inconsistencies and simply summarized the medical evidence to support the RFC determination. (*See* AR 22-24.) Thus, the ALJ failed to provide specific, clear and convincing reasons to support his conclusion that Plaintiff's subjective testimony was not credible. While the Court could fill in the gap and note inconsistencies based on reasonable inferences drawn from the ALJ's decision, such a ruling will not cure the ALJ's error. *See Brown-Hunter*, 806 F.3d at 494. In opposition, even the Commissioner raises inconsistencies to support the ALJ's decision but cites primarily to the administrative record rather than pointing out where

---

[11] The four reasons the ALJ provided were that the claimant had "[1] not generally received the type of medical treatment one would expect for a totally disabled individual"; [2] "record reflect[ed] significant gaps in [her] history of treatment and relatively infrequent trips to the doctor for the allegedly disabling symptoms"; [3] claimant's "use of medications does not suggest the presence of impairments which is more limiting than found in this decision"; [and 4] "medications have been relatively effective in controlling [her] symptoms." *Lambert,* 980 F.3d at 1270, 1277.

24cv349-GPC(MSB)

the ALJ identified testimony he found not credible and connecting the claimant's testimony to the particular parts of the record supporting the non-credibility determination.  (*See* Dkt. No. 13 at 8-10.)

Accordingly, the Court concludes that the ALJ erred in rejecting Plaintiff's subjective testimony by failing to provide specific, clear and convincing reasons. Because the ALJ must take his symptom testimony into account in determining the RFC determination, *Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017), the error was not harmless.  *See Brown-Hunter*, 806 F.3d at 489, 492, 494; *see also Treichler*, 775 F.3d at 1103; *Gomez v. Berryhill*, Case No.: 17-cv-01582-MMA (RNB), 2018 WL 3019935, at *11 (S.D. Cal. June 18, 2018) (finding that the ALJ erred by discounting plaintiff's subjective  symptom testimony and the error was not harmless, where the ALJ "did not accommodate th[e] subjective symptom testimony in [plaintiff's] RFC determination").

### 4.    Step Five

At step five of the sequential evaluation process, "the burden shifts to the Commissioner to prove that the claimant can perform a significant number of jobs that exist in the national economy given the claimant's [RFC], age, education, and work experience."  *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1191 (9th Cir. 2022) (internal citations omitted).

Because the Court has found that the ALJ erred in evaluating Plaintiff's subjective testimony, the ultimate disability determination may change on remand once the ALJ makes a credibility determination with specific, clear and convincing reasons.  Therefore, the Court need not reach Plaintiff's arguments pertaining to the ALJ's step five findings as step five will need to be reconsidered on remand.  *See Erica A. U. v. Comm'r of Soc. Sec.*, CASE NO. 3:21-CV-5005-DWC, 2022 WL 110455, at *4 (W.D. Wash. Jan. 12, 2022) (declining to address step five arguments due to remand to reconsider step five); *Wilson v. Astrue*, No. CV 10–03217–JEM, 2011 WL 1812501, at *10 (C.D. Cal. May 12, 2011) (no need to address step five because ALJ's errors undermine the RFC and the step five determination).  On remand, the ALJ should reassess Plaintiff's RFC after

1  articulating specific, clear and convincing reasons why Plaintiff's subjective testimony is
2  not credible and then reassess step five.

3  **C.    Remand or Award of Benefits**

4        Plaintiff claims the credit-as-true rule applies and the Court should order an award
5  of disability.  (Dkt. No. 11 at 14-15.)  The Commissioner disagrees.  (Dkt. No. 13 at19-
6  21.)

7        The decision whether to remand for further proceedings or order an immediate
8  award of benefits is within the district court's discretion.  *Harman v. Apfel*, 211 F.3d
9  1172, 1175-78 (9th Cir. 2000).   In general, when the Court reverses an ALJ's decision
10  "the proper course, except in rare circumstances, is to remand to the agency for additional
11  investigation or explanation."  *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir. 2004)
12  (citation and quotation marks omitted).

13        Under the credit-as-true rule, "a rare and prophylactic exception of the ordinary
14  remand rule", the Court may order an immediate award of disability benefits if three
15  conditions are met: (1) "the ALJ failed to provide legally sufficient reasons for rejecting
16  evidence, whether claimant testimony or medical opinion", (2) there are no outstanding
17  issues that must be resolved before a disability determination can be made and further
18  administrative proceedings would serve no useful purpose, and (3) when considering the
19  record as a whole and crediting the improperly discounted testimony as true, there is no
20  doubt as to disability.  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citations
21  omitted).  Even if all element are satisfied, the district court continues to have discretion
22  to remand for further proceedings or for award of benefits.  *Id.*

23        In this case, the Court finds that outstanding issue of the ALJ's credibility
24  determination in the RFC finding must be resolved before a disability determination can
25  be made.  Therefore, the Court declines to apply the credit-as-true rule and REMANDS
26  the case to the Commissioner for further proceedings.

27  / / /

28  / / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Conclusion

Based on the reasoning above, the Court ADOPTS in part the R&R, REVERSES the Commissioner's decision and REMANDS the case for further administrative proceedings consistent with the opinion of the Court.  The Clerk of Court shall close the case.

IT IS SO ORDERED.

Dated:  March 27, 2025

Hon. Gonzalo P. Curiel
United States District Judge